**Judi WEAVER, Plaintiff,**

v.

**Norman J. GROSS, et al., Defendants.**

**Civ. A. No. 84–1944.**

United States District Court, District of Columbia.

March 28, 1985.

William H. Horkan, Lynn E. Berry, Farifax, Va., for plaintiff.

Russell H. Gardner, Jeanne M. Phelan, Wolf Pokempner & Hillman, Baltimore, Md., Christopher Hassell, Brault, Grahma,

Scott & Brault, Washington, D.C., for defendants.

## MEMORANDUM OPINION AND ORDER

THOMAS F. HOGAN, District Judge.

Plaintiff, a white female, has brought this action against the individual directors, officers and stockholders of 1330 19th Street Corporation ("the Corporation") for damages arising from the termination of her employment as a bartender at the nightclub "Numbers" operated by the Corporation. Plaintiff alleges that she was terminated as the result of her association with a black person while she·was on the premises of Numbers as a customer on December 7, 1982. Specifically, plaintiff alleges that on that evening she was seen by the defendant Norman Gross leaving Numbers in the company of several acquaintances, one of whom was a black man. The plaintiff further alleges that, upon seeing the plaintiff in the company of the black gentleman, defendant Gross said to the assistant manager of Numbers, "Did you see who she walked out of here with? I want her out of here. I don't even want her in this place, effective now." The following day, December 8, 1982, plaintiff's employment with Numbers was terminated.

Plaintiff maintains that she was discharged from her employment in accordance with a discriminatory policy to prevent blacks from patronizing Numbers or being employed by the Corporation, developed and implemented by the defendants in conjunction with one another, as the sole officers, directors and stockholders of the Corporation, in violation of 42 U.S.C. §§ 1981 and 1985 and the District of Columbia Human Rights Act, D.C.Code §§ 1–2512 and 1–2526 (Count 1). Plaintiff has also brought common law pendant claims against defendant Gross for intentional interference with advantageous business relations (Count 2) and defamation (Count 3).

This case is presently before the Court on the motion of defendants Polar, Curtis and Lubeznik to dismiss Count one, and defendant Gross' motion to dismiss Counts two and three for failure to state a claim upon which relief can be granted, Fed.R. Civ.P. 12(b)(6),[1] or for lack of subject matter jurisdiction, Fed.R.Civ.P. 12(b)(1).

*Count One: Federal Civil Rights/D.C. Human Rights Act*

■ Section 1981 of the Civil Rights Act of 1866 provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts ... as is enjoyed by white citizens.

42 U.S.C. § 1981.[2] Section 1981 has been recognized to prohibit racial discrimination in the making and enforcement of purely private contracts as a valid exercise of Congress' power under the Thirteenth Amendment to eradicate the badges and incidents of slavery. *Runyon v. McCrary*, 427 U.S. 160, 168, 96 S.Ct. 2586, 2593, 49 L.Ed.2d 415 (1976).

■ With respect to those potentially liable, it has been held that officers, directors and employees of a corporation may become personally liable when they

---

1. A complaint may be dismissed for failure to state a claim upon which relief may be granted only where it appears beyond doubt that plaintiff can prove no set of facts entitling him to relief. *Bouchet v. National Urban League, Inc.*, 730 F.2d 799, 805 (D.C.Cir.1984) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957)). For this purpose, the complaint is to be construed in the light most favorable to the plaintiff, with all well-pled allegations of fact and reasonable conclusions therefrom taken as true. *See e.g., Shear v. National Rifle Association of America*, 606 F.2d 1251, 1253 (D.C.Cir.1979); *see generally* 5 C. Wright & A. Miller, Federal Practice and Procedure, Civil § 1357 (1969 & Supp.1984).

2. It has been held that whites can have standing under § 1981 for discrimination they have suffered as the result of their activities with or on behalf of blacks. *Des Vergnes v. Sukank Water District*, 601 F.2d 9 (10th Cir.1979), *vacated on other grounds*, 454 U.S. 807, 102 S.Ct. 81, 70 L.Ed.2d 76 (1981); *Winston v. Lear-Siegler, Inc.*, 558 F.2d 1266 (6th Cir.1977); *DeMatteis v. Eastman Kodak Co.*, 511 F.2d 306 (2d Cir.1975).

intentionally cause an infringement of the rights secured by § 1981, regardless of whether the corporation may also be held liable. *See e.g., Tillman v. Wheaton-Haven Recreation Association, Inc.,* 517 F.2d 1141, 1146 (4th Cir.1975); *Jeter v. Boswell,* 554 F.Supp. 946, 953–54 (N.D.W. Va.1983); *Manuel v. International Harvester,* 502 F.Supp. 45, 49–50 (N.D.Ill.1980). In the present case, the plaintiff alleges that defendant Gross commented on her association with a black person, and initiated the termination of her employment as the result of that incident. The plaintiff has, therefore, stated a prima facie case under § 1981 against defendant Gross.[3]

■ As to the other defendants, however, there is no allegation that they were present at the time the statement was made, or otherwise directly participated in the decision to fire the plaintiff. Instead, plaintiff alleges only that these defendants, along with Gross, adopted a policy to deny *blacks* admittance to Numbers and employment with the corporation. In *Tillman v. Wheaton-Haven Recreation Association, Inc.,* 517 F.2d 1141 (4th Cir.1975), the Fourth Circuit recognized that the adoption of a discriminatory policy by a corporation's board of directors could serve as the basis of § 1981 liability against individual directors, but only when they personally voted for the policy, or otherwise directly participated in the corporation's tort. *Id.* at 1144; *see also Curtis v. Loether,* 415 U.S. 189, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974) (action brought under statutes forbidding racial discrimination fundamentally for the redress of a tort). Thus, in *Tillman* the court held that the plaintiff had stated a cause of action under § 1981 against the directors of a community swim-

ming pool association who voted to deny blacks membership. *Id.* at 1144–46.[5]

The present case lacks the same type of direct correlation between the adoption of the policy alleged by the plaintiff and harm allegedly suffered by the plaintiff as was present in *Tillman.* The plaintiff here raises no allegation that any of the individual defendants voted specifically to discharge her because of her association with blacks, or even that they generally adopted a policy to dismiss white employees who fraternized with blacks. Therefore, because the plaintiff has alleged no policy adopted by defendants Polar, Curtis and Lubeznik directly involving retaliation against whites for their association with blacks, the plaintiff has failed to state a claim against those defendants under § 1981.[4]

■ The plaintiff also asserts injury under Section 1985 of the Civil Rights Act of 1871 as the result of the defendants' alleged policy to discriminate against blacks. Section 1985 provides:

> If two or more persons ... conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws ... whereby *another* is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for recovery of damages ... against one or more of the conspirators.

42 U.S.C. § 1985(3) (emphasis added).[5]

In *Novotny v. Great American Federal Savings & Loan Ass'n,* 584 F.2d 1235 (3rd

---

**3.** Defendant Gross has not, in fact, moved to dismiss Count one.

**4.** The fact that whites have standing under § 1981, *see supra* note 2, does not change the need for the direct relationship between the type of policy allegedly instituted and the injury suffered in order to demonstrate the requisite intent under § 1981.

**5.** In *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), the Supreme Court

held that § 1985 does reach purely private conspiracies as long as there is "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirator's action." *Id.* 91 S.Ct. at 1798–99. However, § 1985 is a purely remedial statute, embodying no substantive rights of its own. Therefore, the plaintiff must be able to point to a violation of some other federal status or constitutional provision, and in the absence of state action must be able to point to one which is violated by purely

**214**

Cir.1978) (en banc), *reversed on other grounds*, 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979),[6] the Third Circuit held that a male employee had standing under § 1985(3) where he alleged he was discharged as the result of challenging the corporation's policy of discrimination against women. *Id.* at 1244–45. In so holding, the court stated:

> Section 1985(3) provides for a cause of action in any instance where "in furtherance of the object of" a proscribed conspiracy an act is done "whereby another is injured in his person or property." By its terms, the statute gives no hint of any requirement that the "other" must have any relationship to the "person or class of persons" which the conspiracy seeks to deprive of equal protection, privileges or immunities.

*Id.* at 1244. The court further cited the legislative history of the Act in support of its conclusion that membership in the class against which the conspiracy is directed is not necessary to state a cause of action under § 1985(3). *Id.* at 1244–45.

■ Even assuming that a rationale similar to that set forth in *Novotny* with respect to standing also distinguishes § 1985 from § 1981 with respect to intent, and the necessary directness of the correlation between the policy alleged and the injury suffered, a different potential barrier to plaintiff's § 1985 action arises in terms of the present debate in the law as to whether corporate officers, directors and employees of a single corporation can conspire under § 1985(3) so as to find them personally liable. In *Novotny, supra,* the Third Circuit held that directors and officers of a corporation may be held liable for conspiracy in their individual capacities under § 1985(3), relying primarily on cases recognizing criminal conspiracies among corporate officers and directors. 584 F.2d at 1256–59. The greater weight of authority has held, however, that because a corporation cannot conspire with itself, the officers and directors of a corporation generally cannot be held liable under § 1985(3) for actions taken in concert with one another. *E.g., Girard v. 94th St. & Fifth Avenue Corp.,* 530 F.2d 66 (2d Cir.), *cert. denied,* 425 U.S. 974, 96 S.Ct. 2173, 48 L.Ed.2d 798 (1976); *Baker v. Stuart Broadcasting Company,* 505 F.2d 181, 183 (8th Cir.1974); *Dombrowski v. Dowling,* 459 F.2d 190, 197 (7th Cir.1972); *Stathos v. Bowden,* 728 F.2d 15, 21 (1st Cir.1984); *Craft v. Board of Trustees,* 516 F.Supp. 1317, 1324 (N.D. Ill.1981); *Rackin v. University of Pennsylvania,* 386 F.Supp. 992, 1005–06 (E.D.Pa. 1974). This Court agrees that, because the general rule of corporate law remains that directors, officers and employees are agents of a corporation, and may act on its behalf, they generally should not be held to be conspirators. In drawing exceptions to this rule, therefore, this Court disagrees with those courts which have taken the position that a conspiracy can be found among corporate agents where more than a single act of discrimination is alleged by the plaintiff. *See Stathos,* 728 F.2d at 21, *Craft,* 516 F.Supp. at 1324; *Rackin,* 386 F.Supp. at 1005–06. As observed by Judge Owens in *Coley v. M & M Mars, Inc.,* 461

---

private conduct. *United Brotherhood of Carpenters & Joiners v. Scott,* 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983) (§ 1985 does not create a cause of action for "private violations" of the First or Fourteenth Amendments). In light of this Court's conclusion, *infra,* that a conspiracy under § 1985 cannot be alleged against these defendants individually for actions taken by them as officers and directors of the Corporation, the Court need not decide whether the remaining § 1981 claim against defendant Gross alone could serve as the underlying violation for a § 1985 claim against all of the alleged conspirators. *See Thompson v. International Association of Machinists,* 580 F.Supp. 662, 667–68 (D.D.C.1984) (§ 1981 may be the federal

right violated for § 1985 purposes). Furthermore, the Court notes that in *Great American Federal Savings & Loan Association v. Novotny,* 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979), the Supreme Court held that violations of Title VII could not be redressed through § 1985. However, because plaintiff does not allege that she was discharged for opposing unlawful *employment* practices against others as would be actionable under 42 U.S.C. § 2000e–3(a), this Court does not view *Novotny* as a barrier to the § 1985 claim.

**6.** *See, supra,* note 15.

F.Supp. 1073 (M.D.Ga.1978), this approach creates the "conceptual difficulty ... that the number of discriminatory acts can create a conspiracy although each act is committed by a single entity." *Id.* at 1076.[7] Instead, the relevant inquiry is whether the acts of the defendants were in fact taken on behalf of the corporation, each acting within the scope of their employment, or instead were taken solely for personal, non-business motivations. *Coley,* 461 F.Supp. at 1077; *see also Rivas v. State Bd. for Community Colleges,* 517 F.Supp. 467, 472 (D.Colo.1981); *cf. Herrmann v. Moore,* 576 F.2d 453, 459 (2d Cir.).

In *Coley* the Court held that the complaint sufficiently alleged personal racial motivations, as opposed to business motivations, in asserting that employees had harassed the plaintiff on the job because of his race. *Id.* at 1076-77. This Court agrees with the holding of *Coley* that a complaint sufficiently alleges the likelihood of personal, nonbusiness motivation where discriminatory activity is attributed to mere employees. *Id.* Such a holding may also be justified when discriminatory activity is attributed to only a few of a Corporation's officers and directors. However where, as here, the complaint alleges that *all* of the officers, directors and stockholders of a corporation adopted an allegedly discriminatory policy this Court cannot find that policy, however misguided, distinct from the operation and management of the Cor-

poration's business.[8] Accordingly, the plaintiff's proper recourse lies against the corporation as an entity,[9] and plaintiff's § 1985(3) claims against all of the defendants must be dismissed.[10]

■ Count one of the complaint also alleges violations of the District of Columbia Human Rights Act, D.C.Code § 1-2512; 1-2526. Like the federal civil rights laws, the District's statute also outlaws employment discrimination and conspiracies to deprive persons of their rights. However, the Human Rights Act requires an individual to elect between the filing of a complaint with the District of Columbia Office of Human Rights and the filing of a private cause of action. *Id.* § 1-2556; *Brown v. Capitol Hill Club,* 425 A.2d 1309, 1312 (D.C.App.1981). The defendants' reply to the plaintiff's opposition to the motion to dismiss includes a copy of a complaint apparently filed by the plaintiff with the District of Columbia Office of Human Rights, and asserts that the plaintiff is therefore barred from bringing this claim here as well. The defendants' pleading, however, is not accompanied by supporting affidavit, and the plaintiff has not had an opportunity to respond to this assertion. The Court will therefore afford the defendants an opportunity to supplement their position on this issue, also permitting the filing of an appropriate response by the plaintiff.

**7.** Even under this rationale considering the number of discriminatory acts, the plaintiff here would not state a claim for conspiracy against the defendants individually. Those courts that have recognized conspiratorial liability on this theory have found more than a single act of discrimination against that plaintiff. *See Stathos, supra; Craft, supra; Rackin, supra.* Here, although the plaintiff alleges that the defendants have engaged in a longstanding policy of discriminating against blacks, and have taken various acts under that policy, the plaintiff does not allege that she, personally, was the target of more than one such act.

**8.** The Complaint itself reflects that plaintiff's allegations are brought against the defendants for actions taken in their official capacity, and blurs the distinction between the defendants as individuals and the corporate entity. The Com-

plaint states that the defendants, as the officers, directors, and stockholders of the corporation, "set and established the operating policies of the Corporation which operated Numbers." (Complaint at ¶¶ 7, 8, 9, 10).

**9.** The plaintiff has, in fact, filed another action against the Corporation as an entity, arising out of the same set of facts at issue here. That case, also pending before this Court, is presently stayed by virtue of the Corporation's petition for bankruptcy. *Weaver v. 1330 Nineteenth Street Corp.,* C.A. No. 83-1945 (D.D.C.).

**10.** Although defendant Gross has not moved to dismiss the § 1985 claim, because an individual cannot conspire alone, this Court will *sua sponte* dismiss this claim as to defendant Gross as well as the other defendants.

*Count Two: Intentional Interference with Business Relationship/Wrongful Discharge*

 Plaintiff has also brought a claim in Count two against only defendant Gross for tortious interference with advantageous business relationship, or wrongful discharge, the complaint being unclear on its fact which tort is alleged. In either case, Count two fails to state a claim against defendant Gross. Tortious interference with contractual relations arises when a defendant interferes with a contract between the plaintiff and some third party. *Donohoe v. Watt*, 546 F.Supp. 753, 757 (D.D.C.1982), aff'd, 713 F.2d 864 (D.C. Cir.1983); *Business Equipment Center, Ltd. v. De Jur-Amsco Corp.*, 465 F.Supp. 775, 788 (D.D.C.1978). Because a corporation cannot act other than through its officers and agents, a corporate officer is an implied party to the contract and, therefore, does not have the third-party status necessary to be liable for tortious interference with contract. *Donahue*, 546 F.Supp. at 757 (claim for intentional interference with business relationship brought against officer of corporation that discharged plaintiff dismissed). In the present case, defendant Gross is an officer of the corporation and cannot be held liable for tortious interference with contract.

 Plaintiff apparently argues in the alternative that Gross may be individually held liable for the tort of wrongful discharge. The District of Columbia, however, does not recognize the tort of wrongful discharge, adhering instead, without exception, to the principle that an employee for an indefinite term is terminable at will. *Ivy v. Army Times Publishing Co.*, 428 A.2d 831 (D.C.App.1981). *See also Uriarte v. Perez-Molina*, 434 F.Supp. 76, 79–80 (D.D.C.1977).

Therefore, plaintiff's claims against defendant Gross in Count two must be dismissed.

*Count Three: Defamation*

Finally, plaintiff asserted a claim for defamation against defendant Gross in Count three, but now concedes that it is barred by the statute of limitations. Accordingly, Count three shall be dismissed.

### Conclusion

Therefore, for the reasons set forth above, it is this 27th day of March, 1985

ORDERED that

1) Plaintiff's claims under 42 U.S.C. § 1981 in Count one are dismissed as to defendants Curtis, Polar and Lubeznik;

2) Plaintiff's claims under 42 U.S.C. § 1985(3) in Count one are dismissed as to all defendants;

3) The defendants shall supplement their motion with respect to plaintiff's claims under the D.C. Human Rights Act within 10 days of the date of this order; and

4) Counts two and three of the Complaint are hereby dismissed.