Harry L. DOWNEY, Plaintiff,

v.

The FIRESTONE TIRE & RUBBER COMPANY, Defendant.

Civ. A. No. 83–3288.

United States District Court, District of Columbia.

Feb. 20, 1986.

Robert B. Fitzpatrick, Fitzpatrick & Associates, Washington, D.C., for plaintiff.

C. Daniel Karnes, Jones, Day, Reavis & Pogue, Cleveland, Ohio, Nancy C. Lee, Jones, Day, Reavis & Pogue, Washington, D.C., for defendant.

## MEMORANDUM

OBERDORFER, District Judge.

From 1948 to 1981 plaintiff was an employee of Firestone Tire & Rubber Company ("Firestone"). From 1948 to 1954 he worked in sales in Richmond and Staunton, Virginia. In 1954, plaintiff transferred to Washington, D.C., first as a sales repre-

sentative, and later as a legislative representative, following and reporting on legislative and regulatory matters of interest to Firestone. Toward the end of 1980 Firestone engaged in a substantial retrenchment. As an incident of that retrenchment, it decided to close the Washington representation office where plaintiff had worked and to perform the function of that office from company headquarters in Akron.

In November, 1980, Firestone's corporate personnel manager informed plaintiff of the impending closing of the Washington office and gave him the option of early retirement or severance pay of about $25,400. Plaintiff was 57 years old at the time. He rejected both options, and, instead, sought reassignment to another job and an opportunity to participate in an outplacement seminar. Originally intending to close the office on December 31, 1980, Firestone continued plaintiff on the payroll until January 31, 1981, while it considered his request to be retained and also arranged for his attendance at an outplacement seminar. A few days after plaintiff's last day of work, Firestone flew him to Akron where company officials met with him at the airport and discussed their efforts to relocate him and also the early retirement/severance pay option. Meanwhile, two employees of the Washington office, both junior to plaintiff, transferred to Akron. Plaintiff was never transferred or reemployed.

Plaintiff originally sued in 1983 claiming age discrimination, breach of contract, and also damages arising from claims sounding in tort. The Court of Appeals has affirmed dismissal of the age discrimination claim and the matter is now before the Court on defendant's renewed motion to dismiss, and in the alternative, for summary judgment, on the contract and tort claims.

There was no written employment contract entered between plaintiff and Firestone, and plaintiff points to no conversation in which he was offered employment for any term of years or for any definite term. Rather, he relies upon the fact that he was employed for a long time and upon language gleaned from a revised Handbook for Firestone Salaried Employees ("Handbook") which was handed to him sometime after November, 1975. He also points to language in a Firestone Salaried Personnel Manual ("Manual"). The Manual is issued by Firestone for the use of its personnel managers and is not distributed to salaried employees generally. It is the essence of plaintiff's claim that the Handbook, as informed by the Manual, states as one of the terms and conditions of his employment that Firestone was obligated to consider his credited service in making transfers during the reduction-in-force and that its failure to do so was an actionable breach of that employment contract.

In November of 1980, before the reduction-in-force which cost plaintiff his job, Firestone modified the Manual to add this guidance for its personnel managers:

> Persons being reduced from their present position [sic] should be transferred *within the department* to a position classification which they have previously performed satisfactorily if that job is held by an employee with less company service. The employee will fill the vacancy created by removing the employee with the least amount of company service in the affected classification.

*Id.* at 2.11.3.A.3 (revised November 1, 1980) (emphasis added). Plaintiff emphasizes the Handbook and Manual provisions which contemplate a "bumping" process, whereby the person with less credited service must be terminated, and that person's position filled by the more senior person in that department. The portions of the Handbook relied upon by plaintiff are, *in haec verba,* as follows:

> As an integral part of its corporate purpose, the company will deal fairly with all groups with which it works, including employees, stockholders, customers, the government and the general public.

*Id.* at 8.

....

Company objectives really coincide with your own if you analyze them. Your aim is undoubtedly to grow, advance and maintain a high degree of security.

*Id.* at 9.

. . . .

Your job is the subject of an unwritten understanding based on mutual trust and agreement between you and the company . . . each expects, and has the right to expect, something from the other.

*Id.* at 16.

. . . .

You can expect fair treatment, the opportunity to grow and improve, to be paid according to standards for the area, and to be rewarded for outstanding performance.

*Id.*

. . . .

Credited service is an important factor in providing opportunities for promotion or transfer and job security for you. Due consideration is given to credited service in selection of persons for promotion or for additional training, or in making personnel reductions or transfers where necessary because of a decline in work requirements. In all cases, however, the primary considerations are: individual merit, capability, job performance, experience and qualifications for the positions involved, and for positions to which subsequent transfer or promotion may be expected.

*Id.* at 18.

. . . .

It [the early identification program] . . . will be used to get you into the position where you can make the maximum contribution and gain the maximum job satisfaction. It provides information that prevents you from getting lost in the crowd. It helps management to help you. No matter what job you start on, the identification program will spot your potential to move into higher levels of compensation, responsibility and accomplishment.

*Id* at 26.

We want you to succeed and advance on the job. To this end, we provide special training wherever needed.

*Id.* at 27.

. . . .

Firestone, for the most part, fills its openings by promoting qualified persons within the company. . . . If you are ambitious to advance you will find the company willing to help you do so.

*Id.* at 27–28.

. . . .

If your service is discontinued prior to the time you are eligible for pension benefits, you will be given termination pay if released because of a reduction in work force. . . .

*Id.* at 32.

Defendant in its motion to dismiss or for summary judgment essentially attempts to hold plaintiff to one theory that plaintiff may have initially held—that he was under his contract entitled to employment until retirement age unless fired for cause. Defendant argues that such a claim must fail because of (1) the absence of a written agreement to that effect and (2) the presumption that employment is "at will." Moreover, defendant notes that in the absence of a writing such a contract would be unenforceable as violative of the Statute of Frauds, since the contract would not be performable within one year. *See Hodge v. Evans Financial Corp.*, 778 F.2d 794 (D.C. Cir.1985).

█ Any contention by plaintiff that he had a contract right of employment until age 65 unless fired for cause is not supported by the undisputed facts. The particular portions of the Handbook relied upon by plaintiff contain some precatory language which might create some general impression of a benign employer. Nowhere, however, does the Handbook hold out any promise of permanent employment or, by its terms, create any actionable contract right to permanent employment. Far

from guaranteeing an employee against termination in the event of any reduction-in-force, the Handbook states (in hindsight) rather ominously:

> Due consideration is given to credited service in selection of persons for promotion or for additional training, *or in making personnel reductions or transfers where necessary because of a decline in work requirements.*

*Id.* at 18 (emphasis added). Or, as stated elsewhere in the Handbook portions relied upon by plaintiff:

> If your service is discontinued prior to the time you are eligible for pension benefits, you will be given termination pay *if released because of a reduction in force*
> . . . .

*Id.* at 32 (emphasis added). Thus the Handbook, the writing on which plaintiff relies, offers no promise of employment until age 65.

Plaintiff, however, no longer pursues any claim that he had any contractual entitlement to employment until retirement. Instead, plaintiff contends, the Handbook by its terms created an enforceable covenant of good faith and fair dealing[1] and created in plaintiff a contract right not to be fired in connection with a reduction-in-force unless Firestone had given due consideration to his seniority credits. The Handbook does state:

> Due consideration is given to credited service in selection of persons for promotion or for additional training, or in making personnel reductions or transfers where necessary because of a decline in work requirements.

*Id.* at 18.

 "Whether a personnel manual create[d] [such] contractual rights for the employee is a question for the jury." *Washington Welfare Association, Inc. v. Wheeler*, 496 A.2d 613, 615 (D.C.App.1985). Defendant's Statute of Frauds arguments are not applicable to *this* alleged contract of indefinite duration (i.e., a contract that defendant would act in good faith and would in conducting any reduction-in-force give due consideration to plaintiff's service credits), as these requirements *are* reflected in a writing—the Handbook on which plaintiff relies. Moreover, even if the Statute of Frauds were applicable, *this* alleged contract could have been performed within one year if plaintiff had within a year after receiving the Handbook been terminated by a properly executed reduction-in-force or died. Accordingly, the Statute of Frauds does not bar plaintiff's attempt to argue to the jury that these Handbook provisions were part and parcel of his employment contract. It will also be for the jury to determine whether Firestone gave due consideration to his seniority.

It may be, of course, that plaintiff will be able to prove only nominal damages because he cannot show that, even had he received due consideration for his service credits, he would have remained in Firestone's employ or that breach of the due consideration obligation otherwise damaged him. It also may be that plaintiff will only be able to show that due consideration would have resulted in retention and entitlement to the opportunity to continue for a year or until early retirement. There also remains for consideration (by the Court or the jury) whether his compensation subsequent to retention after due consideration of service credits would have been at his previous level or at the level earned by one or both of the Washington employees transferred to Akron.

 As to the claim of breach of defendant's alleged contractual obligation to act in good faith and deal fairly, plaintiff's proferred evidence is insufficient to sustain it as a separate claim. The only evidence proferred by plaintiff in support of his claim that defendant breached a duty to act in good faith are the two offers of retirement and severance pay, the transfer of two junior employees to Akron (for positions that would have constituted a *substantial* demotion if given to plaintiff), and plaintiff's assertions that (1) the personnel manual provisions regarding inter-depart-

---

1. See *Tymshare, Inc. v. Covell*, 727 F.2d 1145 (D.C.Cir.1984).

mental "bumps" were changed shortly before the reduction-in-force and (2) that defendant should have more vigorously explored alternative job opportunities for plaintiff. In light of the undisputed circumstances of Firestone's closing of its Washington office, Firestone's option to discharge plaintiff at will, the undisputed efforts which defendant did make to locate alternative employment for plaintiff, and the fact that defendant both paid for the outplacement seminar and kept the D.C. office open for an extra month, plaintiff's proffers are insufficient to sustain a separate claim of breach of any covenant to act fairly and in good faith. Evidence of such an obligation and defendant's actions related thereto will, however, be admissible to inform the claim that defendant violated plaintiff's right to due consideration of his service credits.

The Court has not overlooked plaintiff's claims based on Firestone's alleged tort liabilities. These claims are without merit.

■ With respect to plaintiff's tort claim of wrongful or "abusive" discharge, defendant correctly notes that the District of Columbia jurisdictions have not recognized a tort action for such discharge. *See Weaver v. Gross*, 605 F.Supp. 210, 216 (D.D.C.1985); *Ivy v. Army Times Publishing Co.*, 428 A.2d 831 (D.C.App.1981). Even if such an action were cognizable in this jurisdiction, plaintiff's attempt to bring such a claim to the jury must fail for the same reasons that plaintiff will not be permitted to argue a separate claim of breach of a covenant to act in good faith. Plaintiff's challenge to particular aspects of the *manner* rather than the fact of the discharge is largely subsumed in his claim (informed by the alleged covenant to act fairly and in good faith) that defendant breached a contractual duty to consider service credits in making transfer or termination decisions.

■ Regarding plaintiff's claim based on intentional infliction of emotional distress, even if that claim is not pre-empted by the D.C. Workman's Compensation laws, the undisputed facts reveal no basis for sub-

mitting that claim to the jury. Plaintiff has failed to demonstrate an ability to satisfy the heavy burden borne by one seeking damages for the intentional infliction of emotional distress; reasonable men could not conclude upon examination of the undisputed facts that defendant's conduct was "wanton, outrageous in the extreme, or especially calculated to cause serious mental distress." *Sztan v. Seilers Corporation*, 608 F.Supp. 344, 346 (D.D.C.1985) (citation omitted).

■ Defendants also correctly note that plaintiff's claim of grossly negligent conduct is barred by the D.C. Workman's Compensation laws; even if it were not, it is insufficient on the undisputed facts to go to the jury. Plaintiff himself has conceded that he was treated "professionally," and it is not disputed that defendant made efforts to locate alternative positions for plaintiff and to ease the stress of his termination by, *inter alia*, post-poning the date of termination and sending him to an outplacement seminar. These uncontested facts do not present the type of situation in which a tort claim of "gross negligence resulting in extreme emotional distress" can be sustained. *Compare Saunders v. Air Florida, Inc.*, 558 F.Supp. 1233, 1236 (D.D.C. 1983). Plaintiff's citation of dicta from *Chesapeake & Potomac Tel Co. v. Clay*, 194 F.2d 888, 890 (D.C.Cir.1952) for the proposition that he may recover for emotional distress wrought by financial loss is not persuasive, given the more recent expressions of the parameters of the tort action. *See, e.g., Saunders, supra.*

For all of the above reasons, the accompanying order will dismiss all of plaintiff's claims except that which alleges breach of a contractual obligation to give "due consideration" to plaintiff's service credits in the course of decisions on transfer or termination.

## ORDER

For the reasons stated in an accompanying Memorandum and in consideration of the parties' pleadings and the entire record

herein, it is this 20th day of February, 1986, hereby

ORDERED: that defendant's motion for leave to file amended answer should be, and hereby is, GRANTED; and it is further

ORDERED: that defendant's motion to dismiss, or, in the alternative for summary judgment, should be, and hereby is, GRANTED IN PART and DENIED IN PART; and it is further

ORDERED: that Counts IV, V, VI, and VII of plaintiff's complaint should be and hereby are, DISMISSED; leaving the claim in Count VIII that defendant breached a duty to give due consideration to plaintiff's service credits to be addressed at the trial scheduled to commence March 3, 1986, at 9:30 A.M. in Courtroom No. 3, U.S. Courthouse, Washington D.C.; and it is further

ORDERED: that counsel shall attend a supplemental pretrial conference at 2:00 P.M. on February 21, 1986 in chambers.