**Margaret W. RAUH, Plaintiff,**

v.

**Marshall B. COYNE, et al., Defendants.**

**Renate BOTTALICO, et al., Plaintiffs,**

v.

**Marshall B. COYNE, et al., Defendants.**

**Civ. A. Nos. 88–0833(HHG), 89–1049(HHG).**

United States District Court, District of Columbia.

July 26, 1990.

As Amended Oct. 2, 1990.

David H. Shapiro, Kator, Scott & Heller, Washington, D.C., for plaintiff Rauh.

Winn Newman, Lisa Newell, Eric Hard, and Eric Steele, Newman & Newell, Washington, D.C., for Bottalico plaintiffs.

Allen G. Siegel, Stephan J. Boardman, and Henry Morris, Jr., Arent, Fox, Kintner, Plotkin & Kahn, Washington, D.C., for Coyne defendants.

Daniel M. Clements, Israelson, Salsbury, Clements & Bekman, Baltimore, Md., Sp. Counsel for defendant Marshall Coyne.

Richard Huber, Washington, D.C., for defendant Wlodawsky.

## MEMORANDUM AND ORDER

HAROLD H. GREENE, District Judge.

The instant consolidated actions arise out of an alleged sexual assault on a former Madison Hotel employee, plaintiff Renate Bottalico, by defendant Wlodawsky, the hotel's director of operations, and the subsequent discharge of Bottalico's immediate supervisor, plaintiff Renee Immesghen, after she reported the incident to defendant Marshall Coyne, the owner of the Madison Hotel. Plaintiff Ingrid Davis alleges that she too, was sexually harassed by Wlodawsky and discharged after reporting the harassment to her supervisor. Presently before the Court are several motions to dismiss.

### I

*Coyne Defendants' Motion to Dismiss*

Defendants Marshall B. Coyne, Madison Management Corp., and Madison Hotel Inc. ("the Coyne defendants") have filed a motion for partial dismissal or, in the alternative, to strike plaintiff Bottalico's claim for reinstatement, backpay, and compensatory and punitive damages resulting from her termination. The motion raises a number of issues.

1. *Failure to Exhaust Administrative Remedies*

■ Count I of the Complaint alleges violations of the District of Columbia Human Rights Act of 1977, D.C.Code §§ 1–2501 *et seq.* Section 1–2556(a) of the Act

permits aggrieved parties either to file an administrative complaint or to bring a civil action in court, but not both. Plaintiffs filed administrative claims before commencing the instant action, and the Coyne defendants assert that the complaint should therefore be dismissed. However, after the motion was filed, plaintiffs withdrew their administrative claims and amended their complaint to reflect that fact. The Human Rights Act provides that when a party has withdrawn the administrative complaint, "such person shall maintain all rights to bring suit as if no complaint had been filed." Section 1–2556(a).

Defendants also assert that plaintiffs failed to obtain a "right to sue" notice from the Equal Employment Opportunity Commission before bringing a civil suit. The EEOC issued the letters on May 22, 1989 after the motion in this Court was filed. Amended Complaint, Attachments B–D. Receipt of right-to-sue letters during the pendency of a Title VII action cures any defects caused by a failure to receive the notice earlier. *Williams v. Washington Metropolitan Area Transit Authority*, 721 F.2d 1412, 1418 n. 12 (D.C.Cir.1983).

Thus, the claimed failure to exhaust lacks merit on either basis.

### 2. *Coyne Defendants' Liability for Employee Actions*

Plaintiff Bottalico alleges that Wlodawsky sexually assaulted her on one occasion and made sexually harassing remarks to her on a number of others. Bottalico further asserts that when her supervisor reported the incidents to management, the supervisor was fired. According to the complaint, Wlodawsky created a hostile work environment, and the Coyne defendants, as Wlodawsky's supervisors, are liable for his actions.

The Coyne defendants argue that they neither knew, nor had reason to know, of Wlodawsky's acts, and that they therefore cannot be held liable for them. That argument, too, is flawed.

First. The allegations in the complaint, which must be taken as true for purposes of a motion to dismiss, provide ample basis for a finding that the Coyne defendants had reason to know of the harassment and that they were negligent in not discovering and preventing it. *See* Restatement (Second) of Agency § 219(2)(b), (d) (master liable for torts of servant if master negligent or reckless).

On January 31, 1988—six months before the assault on Bottalico—Wlodawsky allegedly invited plaintiff Ingrid Davis, a catering secretary at the hotel, to a hotel room to "watch dirty movies and drink schnapps." Davis reported this to her supervisor, Julia Carroll, who, in turn, reported it to the hotel's security director. Wlodawsky also discussed the allegations with defendant Marshall Coyne. On February 11, 1988, Julia Carroll allegedly was fired in retaliation for reporting the incident. The complaint also alleges that Wlodawsky made inappropriate sexual remarks to a number of women hotel employees other than the plaintiffs.[1] The number of incidents alleged suggests that an investigation might well have uncovered the problem.

According to plaintiff, the Coyne defendants made no substantial effort to investigate these allegations. There is no indication that other employees whom Wlodawsky supervised were contacted; no attempt was made to ascertain whether similar incidents had occurred with other women; and the Madison Hotel did not promulgate a written policy on sexual harassment until after the instant lawsuit was filed. *See Meritor Savings Bank v. Vinson*, 477 U.S. 57, 72, 106 S.Ct. 2399, 2408, 91 L.Ed.2d 49 (1985).

Second. The "reason to know" test, heavily relied on by the Coyne defendants, is not the exclusive basis upon which an employer may be held derivatively liable. Employers have been held liable on such a basis for hostile work environment harassment where the harassing employee had

---

**1.** He is alleged to have made sexual comments to Coyne's secretary as well as to PBX operators other than Bottalico. When eventually confronted with allegations of such conduct, Coyne is alleged to have dismissed them saying, "You know these Latin Men."

decision-making authority or authority to alter the plaintiff's employment status. *See Huddleston v. Roger Dean Chevrolet,* 845 F.2d 900, 904 (11th Cir.1988); *Hunter v. Allis–Chalmers Corp. Engine Div.,* 797 F.2d 1417, 1423 (7th Cir.1986) (Posner, J.). Wlodawsky undoubtedly had both decision-making authority and the authority to alter the plaintiff's employment status.

*Lipsett v. University of Puerto Rico,* 864 F.2d 881 (1st Cir.1988), and *Steele v. Offshore Shipbuilding, Inc.,* 867 F.2d 1311 (11th Cir.1989), upon which defendants rely, are not to the contrary. These decisions merely conclude that the "reason to know" standard constitutes one test for employer liability; they do not hold that it is the exclusive test. In *Meritor Savings Bank v. Vinson, supra,* 477 U.S. at 72, 106 S.Ct. at 2408, the Supreme Court instructed lower courts to "look to agency principles for guidance in this area." Agency law, of course, employs a number of tests for determining whether a company is liable for the acts of its supervisors. *See generally* Restatement (Second) of Agency §§ 219–237.

Third. The Restatement (Second) of Agency § 219(2)(d) provides for derivative liability where the tortfeasor was aided in accomplishing the tort by the agency relationship with the employer. *See also, Hicks v. Gates Rubber Co.,* 833 F.2d 1406, 1418 (10th Cir.1987). Plaintiff Renate Bottalico asserts that Wlodawsky was able to harass her only because he had a key allowing him to enter the locked PBX room where she worked. Access to the room was restricted, and Wlodawsky had the key because he was a supervisor. Thus, the harassment was, to some extent at least, aided by the agency relationship.

### 3. *Tortious Interference With Employment Rights*

Count IV alleges tortious interference with employment rights. *See Hopkins v.*

*Price Waterhouse,* 825 F.2d 458, 472 (D.C. Cir.1987), *aff'd,* —— U.S. ——, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). Defendant Coyne asserts that he should be dismissed from the claim, relying on *Weaver v. Gross,* 605 F.Supp. 210 (D.D.C.1985). *Weaver,* however, involved a claim for tortious interference with contract, a tort not alleged here. Thus, the case and its reasoning are inapposite.[2]

■ Defendants maintain next that plaintiff Bottalico has failed to state claim for constructive discharge. A claim for constructive discharge must allege facts indicating that the employer deliberately made working conditions intolerable and drove the employee to resign. *Katradis v. Dav–El of Washington, D.C.,* 846 F.2d 1482, 1485 (D.C.Cir.1988).

■ Bottalico alleges Wlodawsky assaulted and verbally abused her on a number of occasions and that when she reported these incidents, her employer not only failed to investigate in good faith, but also embarked on a course of retaliation that included giving her disciplinary write-ups on a pretext and denying her compassionate leave in circumstances where it had been given to other employees. As indicated, a supervisor who had tried to bring her complaints to the hotel management's attention allegedly was fired in retaliation. These allegations provide ample basis for a reasonable juror to conclude that the Coyne defendants made working conditions intolerable, effectively driving plaintiff to resign.

### 4. *Intentional Infliction of Emotional Distress*

■ The Coyne defendants next assert that the allegations underlying the intentional infliction of emotional distress claims of plaintiffs Renee Immesghen and Ingrid Davis are insufficient as a matter of law.[3]

---

**2.** In any event, while a party to a contract cannot, as a matter of law, tortiously interfere with that contract, there is no merit to Coyne's argument that because he is an officer of Madison Management and Madison Hotel, he is also party to whatever contract may have existed between the two companies and plaintiffs.

**3.** Intentional infliction of emotional distress requires extreme and outrageous conduct by the defendant that intentionally or recklessly causes plaintiffs to suffer severe emotional

Both Immesghen and Davis allege that the Coyne defendants fired them because they reported incidents of sexual harassment involving Wlodawsky. These allegations are not insufficient as a matter of law to make out a claim for intentional infliction of emotional distress.

None of the decisions cited by defendants involved the retaliatory termination of employees for properly reporting the wrongful and possibly criminal conduct of a supervisor. Defendants' assertion that they shielded plaintiffs from Wlodawsky—rather than retaliated against them—is both outside the pleadings and in dispute, and as such it is not a proper basis for a motion to dismiss.

To the extent that the intentional infliction claim is based on Wlodawsky's assault on Bottalico, the defendants maintain that they should not be held derivatively liable, asserting that the alleged incidents were not within the scope of Wlodawsky's employment and not part of an effort to further the Coyne defendants' interests.

Even if true, this would not be a proper basis for granting a motion to dismiss. In *Lyon v. Carey*, 533 F.2d 649, 655 (D.C.Cir. 1976), the Court of Appeals for this Circuit concluded:

> It is, then, a question of fact for the trier of fact, rather than a question of law for the court, whether the assault stemmed from purely and solely personal sources or arose out of the conduct of the employer's business. . . .

In any event, defendants' argument that Wlodawsky was acting outside of the scope of his employment is undermined by *Moseley v. Second St. Paul Baptist Church*, 534 A.2d 346 (D.C.1987). *Moseley* teaches that the issue of scope turns on the type of activities the employee was performing when he perpetrated the assault. In *Moseley*, a church janitor caught two boys whom he thought were trespassing on the premises; he locked them in a storage room; and he later sexually assaulted them. The *Moseley* court held that the janitor was not acting within the scope of his employment. The decision, however,

distress. *Sere v. Group Hospitalization, Inc.,* 443

turned on the observation that catching trespassers is not part of a janitor's duties. *Id.* at 348–49. The Court suggested that had the janitor been a security officer, the assault might well have been within the scope of his duties. *Id.* Here, Wlodawsky was Bottalico's supervisor and he entered the PBX room as part of his duties. Thus, his alleged actions may well be within the scope of his employment.

 Even if Wlodawsky's actions were outside the scope of his employment, the Coyne defendants would still be liable if they were negligent in supervising him or if he was aided in perpetrating the harassment by the existence of an agency relationship. *See* Restatement (Second) of Agency § 219(2)(b), (d) (if servant not within scope of employment, master still liable if negligent or if servant aided in accomplishing the harassment by the existence of the agency relationship).

### 5. *Wrongful Discharge*

 Plaintiffs seek damages for wrongful discharge. The District of Columbia Court of Appeals has suggested that it might carve an exception to the employment at will doctrine in the proper circumstances. *Wemhoff v. Investors Management Corporation of America,* 528 A.2d 1205, 1208 n. 3 (D.C.1987). However, it has not done so as yet, *Hall v. Ford,* 856 F.2d 255, 267 (D.C.Cir.1988), and plaintiffs identify no special circumstances that would justify the creation of the tort in the instant case. Accordingly, the wrongful discharge claim must be dismissed.

### 6. *ERISA Exhaustion*

Plaintiff Immesghen and Davis allege that the Madison Hotel terminated them without providing them notice required under Section 606(a)(4) of ERISA, 29 U.S.C. § 1166(a)(4). Citing *Kross v. Western Electric Co.,* 701 F.2d 1238 (7th Cir.1983), the Coyne defendants maintain that the claim should be dismissed for failure to exhaust administrative remedies.

A.2d 33, 37 (D.C.1982).

■ *Kross* rested on issues different from those involved here. The continuation of benefits, the issue here, is not the same as a claim for benefits, the one in *Kross.* The administrative appeal procedure that the *Kross* court required to be exhausted prior to the filing of a civil suit is not triggered until an employee receives notice of the right to continuation of coverage, the employee elects coverage, and then makes a claim for benefits that is denied.

*Kross,* moreover, has been repeatedly and sharply criticized for its failure to distinguish between a denial of benefits and the exercise of statutory rights. *See Amaro v. Continental Can Co.,* 724 F.2d 747, 752 (9th Cir.1984) ("we find *Kross* to be based on a flawed premise, and we refuse to follow it"); *Treadwell v. John Hancock Mutual Life Ins. Co.,* 666 F.Supp. 278, 284 (D.Mass.1987); *McLendon v. Continental Group Inc.,* 602 F.Supp. 1492, 1504 (D.N.J. 1985) ("the court follows the well-reasoned opinion of the Ninth Circuit in [*Amaro*] and rejects the ... opinion ... in *Kross* ..."); *Grywrcznski v. Shasta Beverages,* 606 F.Supp. 61, 64 (N.D.Cal.1984). Even the Seventh Circuit has retreated from *Kross. See Dale v. Chicago Tribune Co.,* 797 F.2d 458, 466 (7th Cir.1986) (exhaustion not mandatory but committed to the sound discretion of the district court).

## II

### *Wlodawsky Motion to Dismiss*

Defendant Wlodawsky has filed a separate motion to dismiss, which largely recapitulates arguments raised by the Coyne defendants in their motion. To the extent that the arguments are the same, they need not be addressed anew.[4] The few remaining points are entirely devoid of merit and may be dealt with briefly.

■ Wlodawsky asserts that Bottalico's assault claim must be dismissed for lack of jurisdiction. However, this Court has federal question jurisdiction over the Title VII claim and pendant and ancillary jurisdiction over all the other claims.

■ Wlodawsky next maintains that Bottalico cannot obtain damages for mental anguish in connection with his assault on her because she did not suffer physical injuries. While the District of Columbia has long employed this rule in negligence actions, Wlodawsky has not cited a single decision extending it to intentional torts, and this Court has been unable to find any.

■ Wlodawsky also asserts that his assault on Bottalico was insufficient to state a claim for intentional infliction of emotional distress. The argument is frivolous given the allegations in the complaint:

Defendant Wlodawsky then walked over to plaintiff Bottalico, put his hand on her shoulder and started rubbing his sexual organ on her arm. He then pulled the sexual organ out of his pants and said, "look at it, look at it, isn't it beautiful," or words to that effect. He next put his sexual organ on the switchboard button and said, "look he's making a call," or words to that effect ... Defendant Wlodawsky then walked up behind plaintiff Bottalico, pulled his pants down to his ankles, grabbed her breast, and tried to pull her pants. When plaintiff Bottalico screamed "you have to stop this right now," defendant Wlodawsky responded "kiss it [his sexual organ] and I'll leave."

Complaint, ¶ 18. These allegations, if proven, provide ample basis for a jury to conclude that Wlodawsky's conduct was beyond the bounds of decency and of a civilized society. *See Waldon v. Covington,* 415 A.2d 1070, 1076 (D.C.1980).

## III

### *Plaintiffs' Motion to Dismiss Wlodawsky Counterclaim*

Even less meritorious is Wlodawsky's counterclaim for libel, slander, malicious

---

**4.** Accordingly, the Court will not address Wlodawsky's arguments regarding exhaustion of remedies, tortious interference with contract, wrongful discharge, and ERISA exhaustion.

prosecution, and abuse of process.[5] Indeed, the claims are so flawed as to raise questions whether they were brought in good faith.

■■■■ Defendant's first claim is for malicious prosecution.[6] The claim is based on a statement Bottalico made to a police officer that defendant assaulted her. In order to maintain a malicious prosecution claim, the underlying criminal action must first have terminated in plaintiff's favor. *Dellums v. Powell*, 566 F.2d 167, 191 n. 65 (D.C.Cir. 1977). To show a termination in one's favor, the plaintiff must prove that a court passed on the merits of the charge against him in such circumstances as to show plaintiff's innocence. F. Harper, F. James & O. Gray, The Law of Torts (1986) § 4.4, at 417; Restatement (Second) of Torts § 660, Comment a.

■■■■ Not only has defendant failed to allege that the action terminated in his favor, but his own deposition shows that it did not. Wlodawsky testified that in order to resolve the case, he entered a pretrial diversion program pursuant to which he was required to perform community service and to undergo psychiatric treatment. Deposition at 159, 163. It cannot seriously be argued that this constitutes a termination of the action in plaintiff's favor; if anything, it indicates the opposite. In any event, there is no evidence that any court has reached the merits of the case.

■■■■ In his opposition to his motion to dismiss, defendant asks the Court for leave to amend his malicious prosecution claim to extend it to apply to the initiation of the instant action. Opposition at 3. The request is frivolous. A prerequisite to a malicious prosecution claim is that the under-

lying case has been resolved in the claimant's favor. *Dellums*, 566 F.2d at 191 n. 65. That, quite obviously, has not happened in the instant action.[7]

■■■■ Defendant's libel and slander claims are likewise flawed on several bases. First, statements made preliminary to or during the course of judicial proceedings are absolutely privileged. *Brown v. Collins*, 402 F.2d 209, 212 (D.C.Cir.1968); *Lewis v. Elliott*, 628 F.Supp. 512, 515 (D.D.C. 1986). As defendant himself maintains, Counterclaim, ¶ 4, Bottalico's statements to the police were made preliminary to, and for the purpose of initiating a criminal proceeding and, thus, privileged.[8] *See also, Vogel v. Gruaz*, 110 U.S. 311, 314, 4 S.Ct. 12, 13, 28 L.Ed. 158 (1883) (statements made by victim of theft to state attorney for purpose of instigating criminal prosecution absolutely privileged). Second, libel requires publication of a written statement, but defendant fails to allege that plaintiff made defamatory writings of any kind. Third, the defamation claim appears to encompass statements other than those made to the police. *See* Counterclaim, ¶ 5 (plaintiff continues to make false statements about defendant). The claim, however, does not identify when, where or to whom these statements were made and, thus, is flawed. *Hall v. Ford*, No. 86–2667, 1987 WL 11991 (D.D.C. May 27, 1987) (LEXIS Genfed Library, Dist. file) (libel claim flawed if when, where and to whom statements made not pleaded); Rule 9(f), Fed.R. Civ.P. (averments of time and place material pleading requirement).

■■■■ Equally frivolous is defendant's claim for abuse of process. Defendant's

---

**5.** The counterclaim also appears to state a claim for tortious interference with an employment relationship. Bottalico has not moved to dismiss the claim, and the Court will, therefore, not address it.

**6.** Malicious prosecution has four elements: (1) defendant must be found to have instituted a criminal action against the plaintiff; (2) the prosecution must have ended in plaintiff's favor; (3) there must have been no probable cause to initiate the criminal proceeding; and (4) defendant must have acted maliciously. *Dellums v. Powell*, 566 F.2d 167, 191 n. 65 (D.C.Cir.1977).

**7.** Defendant's efforts to analogize the instant counterclaim to a counterclaim in a car accident negligence action has no merit whatever. Termination of plaintiff's initial complaint is not, and never had been, a prerequisite to a negligence claim.

**8.** Defendant asserts that the claim applies to "statements made solely for the purpose of motivating the extortion of money and not for a legal action." Opposition at 7. Defendant's argument misses the point; the purpose of the statements is irrelevant.

theory of the claim is that plaintiff's "injection of a lie into the judicial process" constitutes abuse of process. Opposition at 6. Abuse of process, however, does not arise from a misrepresentation to the Court (assuming for the purpose of the present proceeding that there was a misrepresentation). Rather, it results when an action is initiated "to accomplish an end unintended by law" and "the achievement of some end not contemplated in the regular prosecution of the charge." *Morowitz v. Marvel,* 423 A.2d 196, 198 (D.C.1980). There is no dispute whatever about the fact that the end the plaintiffs seek are a monetary award for damages, and that is the end most often contemplated in civil actions.

Accordingly, it is this 26th day of July, 1990

ORDERED that plaintiffs' claim for wrongful discharge be and it is hereby dismissed; it is further

ORDERED that the remainder of the Coyne defendants' motion to dismiss be and it is hereby denied; and it is further

ORDERED that the remainder of defendant Wlodawsky's motion to dismiss be and it is hereby denied; and it is further

ORDERED that plaintiffs' motion to dismiss defendant Wlodawsky's counterclaim be and it is hereby granted; and it is further

ORDERED that defendant Wlodawsky's counterclaim be and it is hereby dismissed except to the extent that it raises a claim for tortious interference with an employment relationship.