Timothy L. **DONOHOE**, Plaintiff,

v.

James G. **WATT**, et al., **Defendants.**

**Civ. A. No. 82–0688.**

United States District Court, District of Columbia.

Sept. 3, 1982.

Lawrence Speiser, John P. Racin, Washington, D.C., for plaintiff.

William H. Briggs, Jr., Asst. U.S. Atty., Edward J. Beder, Jr., Covington & Burling, Washington, D.C., for defendants.

## MEMORANDUM AND ORDER

JACKSON, District Judge.

Plaintiff has brought suit for compensatory and punitive damages against officials of the Department of the Interior and his former employer, ENSERCH Corporation,

alleging violations of his First Amendment rights and interference with his contractual relations which resulted in the termination of his employment as a lobbyist for EN-SERCH. The case is presently before the Court on defendants' motions to dismiss or for summary judgment.

Donohoe is a former "federal relations coordinator" in the Washington office of defendant ENSERCH Corporation, a Dallas-based petroleum company, which currently holds valuable oil and gas leases on federal lands and has a number of applications for additional leases pending with the Department of the Interior. Defendant McCord is the Chairman, President and Chief Executive Officer of ENSERCH. Defendant Watt is the Secretary of the Interior, and defendant Hulett is his assistant.

In November, 1981, Donohoe read a newspaper account of remarks Secretary Watt had reportedly made at a political gathering which quoted Watt as stating that he never spoke in terms of Republicans and Democrats but, rather, of "liberals and Americans." The next day Donohoe wrote a letter to Watt (on personal stationery, but bearing his business address and phone number at ENSERCH's Washington office) taking umbrage at the Secretary's political dichotomy.[1] Hulett brought the letter to the Secretary's attention, unsuccessfully attempted to call Donohoe at ENSERCH's Washington office, and two weeks later sent a letter to defendant McCord (with a copy to the president of the industry trade association) enclosing Donohoe's correspondence.[2] On January 11, 1982, plaintiff was notified he was being discharged and actually left ENSERCH at the end of the month. The complaint was filed March 10, 1982.

Plaintiff alleges that defendants Watt and Hulett have, by their communication with ENSERCH through McCord, violated the Privacy Act, 5 U.S.C., Section 552a(b) and that all defendants have violated his First Amendment rights and tortiously interfered with his contractual relations.

Defendants Watt and Hulett have invoked the doctrine of official immunity. Federal officials enjoy absolute immunity from common law civil liability so long as the challenged action was "within the outer perimeter" of their duties. *Barr v. Mateo,* 360 U.S. 564, 575, 79 S.Ct. 1335, 1341, 3 L.Ed.2d 1434 (1959); *Sami v. United States,* 617 F.2d 755, 770 (D.C. Cir. 1979). The official's acts must simply be within the ambit of his authority and have some connection with the general matters committed to his control or discretion. *Briggs v. Goodwin,* 569 F.2d 10, 15–16 (D.C. Cir. 1977), *cert. denied* 437 U.S. 904, 98 S.Ct. 3089, 57 L.Ed.2d 1133 (1978). *See Expeditions Unlimited, etc. v. Smithsonian Institution,* 566 F.2d 289 (D.C. Cir. 1977), *cert. denied* 438 U.S. 915, 98 S.Ct. 3144, 57 L.Ed.2d 1160

1. Donohoe's December 1, 1981 letter to Secretary Watt stated:

My Dear Mr. Secretary:

Would you kindly furnish a further clarification of your remarks, as reported in a certain California newspaper and reprinted in yesterday's *Washington Post,* which could be construed as a questioning of the patriotism of certain individuals?

For the record, I am an American and a liberal. And the Washington lobbyist for a $3 billion energy concern.

I would appreciate a thorough and personal reply.

Very truly yours,
/s/ Timothy L. Donohoe
Timothy L. Donohoe

2. Hulett's December 15, 1981 letter to McCord read:

Dear Mr. McCord:

I thought you might find interesting a copy of a letter delivered by hand to the Secretary's Office by your Washington representative. The issue Mr. Donohoe questions was part of a joke the Secretary told at a political fundraiser and is certainly not meant to question the patriotism of anyone.

The Secretary is, frankly, surprised at Mr. Donohoe's representation in the attached letter.

Yours truly,
/s/ Stanley W. Hulett
Stanley W. Hulett
Assistant to the Secretary and
Director of Congressional and
Legislative Affairs

Attachment

cc: Mr. Charles DiBona
American Petroleum Institute

(1978). It is undisputed—and indisputable—that a cabinet officer and his immediate subordinate have authority to receive and disseminate communications addressed to them, which have to do with their public utterances. It does not matter whether they do so wisely and benevolently; in so doing they act with impunity from civil tort suits.

When violations of constitutional rights are alleged, however, the immunity of executive branch officers is qualified. It exists only to the extent the official acted reasonably and in good faith. *Butz v. Economou,* 438 U.S. 478, 507, 98 S.Ct. 2894, 2911, 57 L.Ed.2d 895 (1978). In *Harlow v. Fitzgerald,* —— U.S. ——, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) the Supreme Court suggested the "threshold" analysis a trial court should undertake in determining the scope of federal officials' civil immunity when a constitutional tort is charged, and this preliminary resolution of the immunity question is to precede discovery, or, in effect, should be undertaken before any consideration is given to the existence of factual issues. 102 S.Ct. at 2739.

The first consideration is a "functional" determination of the necessity for immunity to enable the official to discharge his duties without fear of personal civil liability. 102 S.Ct. at 2734–36. The Court concludes that a cabinet officer (and at least his immediate subordinates) must be able to communicate freely with enterprises having business with the department, including the right to offer adverse commentary upon the integrity, competence, judgment, or discretion of their representatives. Any inhibition of that communication would disserve both the government and those having business with it. The Court finds that the governmental defendants' transmission of plaintiff's correspondence to his private employer for informational purposes to be an appropriate official function and, thus, to satisfy the "functional" test of *Harlow v. Fitzgerald.*

The second consideration is an "objective" inquiry into the extent to which the official knew or reasonably should have known that his conduct would violate "clearly established statutory or constitutional rights." *Harlow, supra,* at 2738–39. Plaintiff cites no constitutional provision, statute (other than the Privacy Act) or judicial decision which establishes, with or without clarity, a right to have one's entirely volitional unsolicited personal correspondence to a government official kept secret from anyone including his employer.

The only arguably applicable provision of the Privacy Act, 5 U.S.C., Section 552a(b),[3] prohibits federal agencies from disclosing "any record which is contained in a system of records" without the prior written consent of the individual to whom the record pertains. A "record" is defined in Section 552a(a)(4) as being "any item, collection, or grouping of information about an individual," and Section 552a(a)(5) defines a "system of records" as a "group of any records under the control of any agency from which information is retrieved by the name of the individual...." or some other identifying particular. Although the government defendants concede the issue for purposes of their motion, the Court has considerable doubt whether a letter such as plaintiff's becomes, on receipt, an agency "record" subject to the Act no matter how it is filed or if it is filed at all. *See Savarese v. U.S. Department of Health, Education and Welfare,* 479 F.Supp. 304 (N.D. Ga. 1979) *aff'd.* 620 F.2d 298 (5th Cir. 1980), *cert. denied* 449 U.S. 1078, 101 S.Ct. 858, 66 L.Ed.2d 801 (1981); *King v. Califano,* 471 F.Supp. 180 (D.D.C. 1979).

Assuming, however, without deciding that it is such a record, the Court concludes that plaintiff's right to have it remain concealed within the Department of the Interior is not so clearly established as to overcome the defense of immunity. Nothing in the Act's legislative history, its

---

**3.** Although 5 U.S.C., Section 552a(e)(7) is mentioned in plaintiff's first amended complaint, plaintiff does not argue this section's applica- bility in his oppositions to defendants' motions. The Court assumes this claim has been abandoned.

text, or judicial efforts to reconcile its policy and provisions with the Freedom of Information Act[4] would serve to have forewarned defendants Watt and Hulett that, by sending plaintiff's letter to others, they would be transgressing upon a right approaching constitutional proportions, or, for that matter, to have permitted Donohoe to derive any expectation of privacy for it. Indeed, Donohoe had no greater right to anticipate that his opinions would not be disseminated than did Secretary Watt that his would not be reported. Both, having exercised their First Amendment rights, must bear the consequences of being quoted.[5]

In summary, the Court holds that plaintiff has not alleged a claim against defendants Watt and Hulett from which they would not be immune and grants their motion to dismiss.

Plaintiff has charged the private defendants, ENSERCH and McCord, with conspiring with Watt and Hulett to violate his First Amendment rights by discharging him from ENSERCH in retaliation for his letter to Secretary Watt. The First Amendment, however, is applicable only to state, not private, action, and ENSERCH and McCord could be found liable for an unconstitutional conspiracy only if they purported to act under "color of law," i.e., if their "activities were in some way controlled by the government." *Logiurato v. ACTION,* 490 F.Supp. 84, 91 (D.D.C. 1980). Although McCord fired plaintiff because of the letter to Watt, of which he learned initially from Hulett, there is no indication that McCord was compelled in any way by Watt and Hulett to do so. Plaintiff's intimation that ENSERCH's oil and gas leases might have been in jeopardy had McCord not reacted as he did is pure speculation and not an inference permissible from any evidence of record. McCord has stated in answer to an interrogatory that he would have taken the same action regardless of how he learned of the letter to Watt. Even if the stimulus to act originates with the government, a private individual's independent conduct based on information supplied to him by a government official cannot be characterized as state-action. *United States v. Cangiano,* 464 F.2d 320, 323–325 (2nd Cir. 1972) *vacated on other grounds,* 413 U.S. 913, 93 S.Ct. 3047, 37 L.Ed.2d 1023 (1973); *Gold v. United States,* 378 F.2d 588, 591 (9th Cir. 1967); see *Reporters Committee for Freedom of the Press v. American Telephone & Telegraph Co.,* 593 F.2d 1030 (D.C. Cir. 1978), *cert. denied,* 440 U.S. 949, 99 S.Ct. 1431, 59 L.Ed.2d 639 (1979).

Finally, plaintiff contends that defendants McCord and ENSERCH are liable for tortious interference with his employment contract which plaintiff concedes was an oral contract at will. It is a well settled principle of law that this tort arises only when there is an interference with a contract between the plaintiff and a third party. A defendant's conduct under his own contract with the plaintiff may or may not rise to the level of a breach of that contract, but it cannot support an action for interference with it. *Business Equipment Center, Ltd. v. DeJur-Amsco Corp.,* 465 F.Supp. 775, at 788 (D.D.C. 1978); see Prosser, *Torts* Section 129, at 934 (4th ed. 1971).

Therefore, it is, this 3rd day of September, 1982,

ORDERED, that the motion of defendants Watt and Hulett to dismiss is granted, and the motion of defendants ENSERCH and McCord for summary judgment is granted.

---

**4.** *See, e.g., Greentree v. U.S. Customs Service,* 674 F.2d 74 (D.C. Cir. 1982); *Terkel v. Kelly,* 599 F.2d 214 (7th Cir. 1979), *cert. denied,* 444 U.S. 1013, 100 S.Ct. 662, 62 L.Ed.2d 642 (1980).

**5.** It is also unnecessary to decide whether Donohoe's letter is an exempt Privacy Act record under Section 552a(b)(2) as one of which the FOIA would require disclosure with or without a triggering FOIA request. *Compare Florida Medical Association v. HEW,* 479 F.Supp. 1291, 1301 (M.D. Fla. 1979) *with Zeller v. U.S.,* 467 F.Supp. 487, 503 (E.D.N.Y.1979).