**Maria SAYAN, et al., Appellants,**

v.

**RIGGS NATIONAL BANK OF WASHINGTON, D.C.,**
Appellee.

No. 87–139.

District of Columbia Court of Appeals.

Argued April 5, 1988.
Decided April 29, 1988 *.

Kurt Berlin, Washington, D.C., with whom Jeffrey C. Tuckfelt was on the brief, for appellants.

Nancy F. Preiss, with whom Paul Martin Wolff, F. Lane Heard III, and Jefferson M. Gray, Washington, D.C., were on the brief, for appellee.

Before MACK, FERREN, and STEADMAN, Associate Judges.

FERREN, Associate Judge:

This case primarily concerns the application of § 4–401 of the Uniform Commercial Code. The trial court granted appellee Riggs National Bank of Washington, D.C.'s motion for summary judgment against appellants National Auto Broker Wholesalers, Inc. (NABW), International Auto Brokers Wholesalers, Inc. (IABW), SDF, Ltd., and the owner of those companies, appellant Maria Sayan. The court awarded Riggs $1,024,223.12 in damages plus $224,823.97 in prejudgment interest. Sayan now appeals, contending that summary judgment was improperly granted because genuine issues of material fact remain in dispute and can only be resolved by reference to an auditor-master or at a trial. Finding no error in the trial court's rulings, we affirm.

## I.

Maria Sayan is the sole owner of NABW, IABW, and SDF. NABW had had two commercial accounts at Riggs Bank since August 1979. One was a general account; the second was a "zero balance" account. The purpose of the "zero balance" account was to debit drafts written by NABW. The drafts, once approved by NABW for payment, could then be covered by funds drawn from the general account. NABW later opened two additional commercial accounts: a special account and an auto/office expense account. IABW, SDF, and Sayan personally also had accounts at the bank.

---

* The decision in this case was originally released as a Memorandum Opinion and Judgment on April 29, 1988. It is now being published by direction of the court.

Riggs alleges, and appellants do not dispute, that by March of 1984, the NABW accounts were significantly overdrawn.[1] Riggs eventually demanded immediate repayment of the overdraft in an amount over $1 million. The overdraft was not repaid, and the present litigation ensued.

## II.

Super.Ct.Civ.R. 56(c) provides that summary judgment shall be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." This court, in reviewing a grant of summary judgment, is obliged to view the facts in the light most favorable to the non-moving party. *McCoy v. Quadrangle Development Corp.*, 470 A.2d 1256, 1258 n. 3 (D.C.1983); *Truitt v. Miller*, 407 A.2d 1073, 1077 (D.C. 1979). We are not bound by the rulings of the trial court, *Franklin Investment Co., Inc. v. Huffman*, 393 A.2d 119, 121 (D.C. 1978) (citing *Owens v. Tiber Island Condominium Association*, 373 A.2d 890, 894 (D.C.1977)), and are required to conduct an independent review of the record, *Scrimgeour v. Magazine*, 429 A.2d 187, 188 (D.C. 1981). The party opposing summary judgment, however, must show that a fact alleged to be in dispute is material, and that " 'there is sufficient evidence supporting the claimed factual dispute to require a jury or judge to resolve the parties' differing versions of the truth at trial.' " *Nader v. de Toledano*, 408 A.2d 31, 42 (D.C.1979), *cert. denied*, 444 U.S. 1078, 100 S.Ct. 1028, 62 L.Ed.2d 761 (1980) (quoting *International Underwriter, Inc. v. Boyle*, 365 A.2d 779, 782 (D.C.1976)). We conclude that appellants have not made the necessary showing here.

## A.

Rule 56(e) specifically requires that when a motion for summary judgment is made and is supported by affidavits, depositions, or answers to interrogatories, "an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." Super.Ct.Civ.R. 56(e). Riggs moved for summary judgment on Count II of its complaint only, alleging breach of appellants' obligations under the terms of its various accounts with the bank. Riggs contended that: (1) NABW's account was overdrawn in the amount of $1,024,223.12; (2) the overdraft constituted a loan immediately due and repayable to the bank; and (3) the loan was outstanding and had not been repaid. In support of its motion for summary judgment, Riggs filed the affidavit of Ms. Mary Parsons, Senior Operations Officer in the Adjustments Department of the bank, setting forth the source and amount of the overdraft outstanding on appellants' account.

In response, appellants filed a Statement of Material Facts as to Which There is a Genuine Factual Dispute and attached the affidavit of appellant Maria Sayan. The statement of facts in dispute, however, did not contest the material allegations set forth in Riggs' pleadings and in the Parsons affidavit. Indeed, Sayan admitted in her affidavit that Riggs had honored overdrafts against NABW's account and had debited an interest charge against the account for their payment. Appellants, in their Memorandum of Points and Authorities in opposition to Riggs' summary judgment motion, also admitted that "Riggs loaned [NABW] the funds to cover overdrafts and charged regular interest at a fluctuating rate on the credit extended to [NABW]." Nowhere did appellants dispute Riggs' allegation that the current outstanding overdraft remained unpaid. Nor did appellants challenge Parsons' calculation of

---

**1.** Riggs alleges that appellant Sayan engaged in an elaborate check kiting scheme, involving the transfer of money among her accounts, which resulted in the overdraft at issue. The details of the scheme are not relevant here, however, as appellants have conceded that an overdraft did exist and Riggs has dropped its fraud claim against Sayan.

the amount of the deficit. In short, appellants set forth no "specific facts showing that there is a genuine issue for trial." Super.Ct.Civ.R. 56(e).

### B.

█ We next address the second part of the summary judgment inquiry: whether, on the undisputed facts, Riggs was "entitled to a judgment as a matter of law." Super.Ct.Civ.R. 56(c). D.C.Code § 28:4–401(1) (1981), which codifies § 4–401(1) of the Uniform Commercial Code, states:

As against its customer, a bank may charge against his [or her] account any item which is otherwise properly payable from that account even though the charge creates an overdraft.

The proper payment of an overdraft by the bank carries with it an implicit agreement by the customer to repay the loan. The official comment to U.C.C. § 4–401 states:

It is fundamental that upon proper payment of a draft the drawee may charge the account of the drawer. This is true even though the draft is an overdraft since the draft itself authorizes the payment for the drawer's account *and carriers an implied promise to reimburse the drawee.*

7 ANDERSON ON THE UNIFORM COMMERCIAL CODE 134 (1985) (emphasis added); *see United States v. Christo,* 614 F.2d 486, 493, *reh. denied,* 618 F.2d 1390 (5th Cir. 1980) (overdraft carries implied promise to repay); *First National Bank of Evergreen Park v. Lambert,* 109 Ill.App.3d 177, 181, 64 Ill.Dec. 754, 758, 440 N.E.2d 306, 310 (1982) (affirming grant of summary judgment to bank in action to collect overdraft); *First-Citizen Bank & Trust Co. v. Perry,* 40 N.C.App. 272, 274, 252 S.E.2d 288, 290 (1979) (affirming grant of summary judgment to bank in action to collect overdraft). Accordingly, when Riggs honored the overdraft against NABW's account, a duty arose on appellants' part to repay that amount. Moreover, the course of conduct between the parties suggests that an implicit overdraft/loan arrangement had been reached. Sayan stated in her affidavit:

[S]ome time after the Riggs and [NABW] entered into their agreement, Riggs changed the terms thereof so that [NABW] obtained immediate credit for uncollected funds. Riggs honored said checks as cash and debited an interest charge against [NABW's] account for any overdrafts.

Appellants asserted in their Memorandum of Points and Authorities in opposition to Riggs' motion for summary judgment that:

Plaintiff Riggs National Bank of Washington, D.C. (hereafter "Riggs"), has moved for summary judgment solely on Count II of its complaint. Said count alleges breach of a written contract between the parties in August 1979. *Subsequent to said written agreement the parties modified the terms by allowing defendant National Auto Brokers Wholesalers, Inc. (hereafter "National") to write checks on uncollected funds and have Riggs immediately honor them. The modification of said agreement is evidenced by the conduct of the parties,* specifically officers of Riggs, who initialed uncollected deposits as cash. This practice by Riggs is supported by its very records which show that for eleven months prior to March 1984 [the date of the overdraft at issue in this case] Riggs allowed National to maintain its accounts despite a negative balance. *Thus, Riggs loaned National the funds to cover overdrafts and charged regular interest at a fluctuating rate on the credit extended to National.*

Appellants thus effectively conceded their obligation to repay to Riggs the amount of any overdraft honored.

### III.

█ Appellants assert that even if summary judgment was properly granted on the issue of liability, it should not have been granted as to damages. Appellants also argue that the award of prejudgment

interest on the damages was improper.[2] Again, we find no merit in appellants' contentions. The Parsons affidavit, filed with Riggs' Memorandum in Support of Plaintiff's Motion for Summary Judgment, set forth the amount of the overdraft alleged by Riggs, and the affidavit of Walter Howell, filed with Riggs' Supplemental Memorandum in Support of Plaintiff's Motion for Summary Judgment Regarding Damages, set forth the pre-judgment interest requested on that amount. Appellants did not challenge either calculation in the trial court. Nor did appellants contest the propriety, as a legal matter, of Riggs' interest request. Instead—without asserting that Riggs' calculations were in any way faulty—appellants simply moved to refer the matter to an auditor-master for analysis. The trial court properly denied appellants' motion—as was within its discretion to do (see Super.Ct.Civ.R. 53(b) ("A reference to a master shall be the exception and not the rule."))—and, in the absence of any factual or legal challenge, did not err in awarding damages as claimed by appellee.

### IV.

Appellants having raised no genuine issue as to any material fact, and Riggs having been entitled to judgment as a matter of law, the trial court properly entered summary judgment in Riggs' favor.

*Affirmed.*

---

2. Prejudgment interest on a liquidated debt is permitted under D.C.Code § 15–108 (1981), which provides:

> In an action in … the Superior Court of the District of Columbia to recover a liquidated debt on which interest is payable contract or by law or usage the judgment for the plaintiff shall include interest on the principal debt from the time when it was due and payable, at the rate fixed by the contract, if any, until paid.

*Riggs* requested prejudgment interest in the trial court and asserted that interest on overdrafts is generally charged at the prime rate, or at the prime rate plus two points. The Howell affidavit states that interest on overdrafts against a corporate account is generally the prime rate of interest plus two points, but that interest on NABW's overdraft was calculated by him at the prime rate. In fact, exhibit E to appellants' own Memorandum of Points and Authorities in opposition to Riggs' summary judgment motion is a Riggs document which states, "it is our [Riggs'] practice to charge the prevailing fee for any overdrafts and, where appropriate, to charge interest at no less than the prime rate of interest."