Ernest C. RASKAUSKAS, Jr.,
Appellant,

v.

TEMPLE REALTY CO., et
al., Appellees.

No. 89–911.

District of Columbia Court of Appeals.

Argued Feb. 19, 1991.
Decided April 4, 1991.

Ernest C. Raskauskas, Jr., pro se.

Robert D. Sokolove, with whom Gary K. Stearman, Chevy Chase, Md., was on the brief, for appellees.

Before ROGERS, Chief Judge, SCHWELB and FARRELL, Associate Judges.

ROGERS, Chief Judge:

This appeal involves the claim of appellant Ernest C. Raskauskas, Jr. that he was wrongfully deprived of the right to purchase two units (and parking spaces) in the Crestview apartment building, which was being converted to condominiums by Temple Realty Company, the owner and developer. Appellant originally sued the owner

and its parent company and agent Hoskinson & Davis Inc., as well as appellee Crestview Tenants Association, which appellant claims wrongfully revoked his membership, and appellees Carol Fisch and Sylvia Stivelband, with whom the owner had contracted to sell the two units which appellant claimed he was entitled to purchase. The Crestview Tenants Association, which was formed to represent a group of tenants as the building was converted, entered into a development agreement with the owner whereby the tenants were given the right to purchase units and had, appellant claimed, arranged for these two units to be sold to appellees Fisch and Stivelband.

In his complaint, appellant sought (1) a declaratory judgment that he was a member in good standing in the Association entitled to purchase the two apartments, and (2) damages for tortious interference with the contract between him and the owner of the apartment building. He subsequently entered into a stipulation of settlement and dismissal with prejudice of his claims against Temple Realty Company and Hoskinson & Davis, Inc., for breach of contract, tortious interference with contract and a shareholders' derivative claim. Under the settlement, the owner agreed to convey the two units to appellant if the court determined that he had been wrongfully ejected as a member of the Tenants Association or was otherwise entitled to purchase the two units. Thereafter, the remaining defendants, appellees, filed a motion to dismiss appellant's declaratory judgment counts under Super.Ct.Civ.R. 19 for failure to join an indispensable party, and a motion for summary judgment on the tortious interference claims. The trial judge granted the motions, dismissing appellant's declaratory judgment claims without prejudice, and granting summary judg-

ment to appellees on the tortious interference claims. We conclude that both the dismissal of the declaratory judgment counts and the grant of summary judgment on the tortious interference counts were error, and we accordingly reverse and remand the case for further proceedings.

I.

In the mid–1980s, Temple Realty Company, the owner of the Crestview apartment building, began the process of converting the apartments to condominium units. Many of the tenants formed the Crestview Tenants Association to represent them in negotiations with the owner. Appellant was the first president of the Association, and drafted its articles of incorporation and bylaws, which were filed with the District of Columbia government pursuant to D.C. Code § 45–1640 (1989).

The Association and its members entered into a Development Agreement with the owner providing that each member of the Association could purchase one or two units at specified prices below fair market value. The Association originally granted appellant the right to purchase two units. For reasons that remain in dispute, the Association later terminated appellant's membership and reassigned the right to purchase the two units to appellees Fisch and Stivelband. Appellant contends that his membership in the Association was illegally revoked; appellees claim that they properly terminated appellant's membership after he failed to fulfill his obligations under the Association bylaws.

Appellant filed suit in 1986 against appellees and the owner. Although the original complaint included seven counts,[1] appellant voluntarily dismissed the three counts against the owner pursuant to a settlement

---

1. The first count alleged a breach of contract claim against the owner, seeking damages and specific performance. The second count sought damages from the Association for tortious interference with appellant's contract with the owner. The third count sought a declaratory judgment against the Association that appellant is a member in good standing of the Association and is entitled to buy the two disputed units. The fourth count sought damages against the owner

for tortious interference with appellant's Association membership. The fifth count sought damages from appellee Fisch for tortious interference with appellant's contract with the owner and for tortious interference with appellant's Association membership. The sixth count was a derivative suit against the owner. The seventh count was a request for a declaratory judgment against Fisch and Stivelband, to the same effect as the third count.

which was approved by the court on May 1, 1989. Appellant moved for partial summary judgment on two of the counts, affecting the unit sold to appellee Fisch, citing D.C.Code §§ 45–1631, –1633 (1990), which was denied. Thus, the case came to trial on two counts seeking a declaratory judgment that appellant was a member in good standing in the Association entitled to purchase the two disputed units, and two counts seeking damages for tortious interference with contract. The trial judge bifurcated the proceedings, and began trial on the declaratory judgment claims. After seven days of trial, the judge dismissed appellant's declaratory judgment claims, without prejudice, for failure to join the owner, an indispensable party under Super. Ct.Civ.R. 19. The judge reasoned:

> The rights and obligations of these parties arise out of the Development Agreement, of which they are all parties.... Inasmuch as the rights sued upon in these two Counts arise out of the Development Agreement, all parties to that Agreement are indispensible [sic] and should be joined in this action, for purposes of these Two Counts for Declaratory Judgment....

> Having removed the owner of these units which are in controversy, by entering into a settlement with it and dismissing his claim against that owner with prejudice, [appellant] has removed an indispensible [sic] party, the owner of the property against whom all parties are asserting a right to purchase....

Appellant contends that the trial judge erred in dismissing his claims for a declaratory judgment for failure to join the owner as an indispensable party since the judge misapplied the joinder rule and failed to acknowledge that appellant's claim to membership in the Tenants Association was based on a statutory entitlement under the Rental Housing Conversion and Sale Act of 1980 which made the owner's presence in the litigation unnecessary.

■ Joinder of necessary parties is governed by Rule 19, which "makes it clear that questions of compulsory joinder are to be resolved on the basis of practical considerations...." 7 C. WRIGHT, A. MILLER & M. KANE, FEDERAL PRACTICE AND PROCEDURE § 1607 at 86 (2d ed. 1986) (hereinafter "WRIGHT, MILLER & KANE"); see also Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 116 n. 12, 88 S.Ct. 733, 741 n. 12, 19 L.Ed.2d 936 (1968) (encouraging courts to consider the "practical considerations" of each individual case).[2] Under the rule, a trial judge is obliged to consider motions to dismiss for failure to join an indispensable party under a three-part procedure. First, the judge should determine whether the absent person is one "whose joinder would be desirable for a just adjudication of the action" under Super.Ct.Civ.R. 19(a). 7 WRIGHT, MILLER & KANE, supra, § 1604 at 36. Second, the trial judge "shall order that [such a] person be made a party" if feasible. Super.Ct.Civ.R. 19(a). Third, if such a person "cannot be made a party," the judge should consider "whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable." Super.Ct. Civ.R. 19(b). Although the trial judge did not explicitly follow this procedure,[3] his decision can be read as implicitly concluding that (1) the owner's joinder was desirable for a just adjudication, (2) the owner could not feasibly be joined, and (3) "in equity and good conscience" the case could not proceed in the owner's absence. We find no error in the first ruling, but conclude that the judge abused his discretion in the second and the third rulings. See Coastal Modular Corp. v. Laminators, Inc., 635 F.2d 1102, 1108 (4th Cir.1980);

---

**2.** Because Super.Ct.Civ.R. 19 is identical to Fed. R.Civ.P. 19, we look to authorities interpreting the federal rule. See Moore v. Moore, 391 A.2d 762, 768 (D.C.1978).

**3.** "By proceeding in this orderly fashion" a trial judge can facilitate appellate review. 7 WRIGHT,

MILLER & KANE, supra, § 1604 at 41. Moreover, the judge "will be able to avoid grappling with the difficult question of indispensability whenever [he or she] initially decides that the absentee's interest is not sufficient to warrant compelling his [or her] joinder." Id. § 1604 at 41–42.

*see generally Johnson v. United States,* 398 A.2d 354, 365 (D.C.1979) (abuse of discretion by trial court not to consider appropriate factors). Accordingly, we reverse the dismissal of the declaratory judgment counts.

### A. The Owner's Joinder Was Desirable.

■ Rule 19(a) describes several reasons why an absent person's joinder might be desirable for a just adjudication. The trial judge relied on clause 19(a)(1), which states that a "person ... shall be joined as a party in the action if ... in the person's absence complete relief cannot be accorded among those already parties...." This clause "is designed to protect those who already are parties by requiring the presence of all persons who have an interest in the litigation so that any relief that may be awarded will effectively and completely adjudicate the dispute." 7 WRIGHT, MILLER & KANE, *supra*, § 1604 at 42. Joinder under this provision is thus designed to protect those already parties from the possibility of multiple suits concerning the same dispute.

In the absence of any specification by appellees as to the nature of their likely claim against the owner if appellant prevailed in his lawsuit, the owner was in the position of a stakeholder. *Cf. Habib v. Miller,* 284 A.2d 56, 57 (D.C.1971) (settlement agent "testified that the firm would pay the money to whomever the court directed"). Consequently, under this view the trial judge would have erred in finding that the owner was a party whose presence was needed for a just adjudication. On the other hand, we are unable to conclude that the trial judge abused his discretion in concluding that the declaratory judgment sought by appellant would impose on appellees the possibility of multiple litigation with the absent owner. Appellant sought a declaration that he was entitled to pur-

chase the two disputed units to which the owner still held title. Two of the appellees, however, have contracts of sale with the owner concerning the same two units. Thus, the judge could reasonably conclude that if appellant prevailed in the declaratory judgment action, litigation might ensue between the owner and appellees Fisch and Stivelband. So viewed, we would find no error in the judge's ruling that the owner's presence was desirable in order to protect appellees' interest in avoiding multiple litigation, and to "further the public interest in the avoidance of inconsistent verdicts and multiple actions." 7 WRIGHT, MILLER & KANE, *supra*, § 1604 at 48.

### B. The Owner Could Have Been Joined.

■ Under Rule 19, once a trial judge determines that an absent person's presence would be desirable, the judge "shall order that [the person] be made a party." Super.Ct.Civ.R. 19(a). The trial judge in the instant case did not make an explicit determination whether the owner's joinder was feasible; the judge simply noted that the owner was "no longer a party to this action; the action, as to that defendant, having been dismissed with prejudice by Order of the Court, pursuant to a settlement agreement between that defendant and [appellant]...." We are unable to conclude, however, that appellant's settlement with the owner made it infeasible for the trial judge to order the owner joined.

■ Rule 19 describes a person who is not "subject to service of process" as an example of a person whose joinder is not feasible.[4] The Rule later states that the court should consider dismissal only if a person whose presence would be desirable "cannot be made a party." Super.Ct.Civ.R. 19(b). Thus, given the explicit language of the Rule, we join the federal courts and interpret Rule 19 to require a trial judge to order joinder whenever possible. *See, e.g.,*

---

4. Rule 19 also refers to a person "whose joinder [would] deprive the Court of jurisdiction over the subject matter of the action." This language comes from the federal rule, which clearly refers to a party whose presence would defeat the federal court's diversity jurisdiction. *See* 7

WRIGHT, MILLER & KANE, *supra*, § 1604 at 63. Because the concept of diversity jurisdiction has no relevance to our courts, however, this language in our local Rule 19 has no obvious meaning.

*Willingham v. Lawton,* 555 F.2d 1340, 1345–46 (6th Cir.1977) (refusing to order dismissal when joinder was possible); *JTG of Nashville, Inc. v. Rhythm Band, Inc.,* 693 F.Supp. 623, 627–28 (M.D.Tenn.1988) (same); *see also Naartex Consulting Corp. v. Watt,* 232 U.S.App.D.C. 293, 722 F.2d 779 (1983) (upholding dismissal under Rule 19(b) where defendants, over whom court lacked personal jurisdiction, had proprietary interest in lease which Naartex sought to cancel and alternative forum was available). Appellees' claim of impossibility rests on appellant's "settlement agreement with the [owner] and subsequent dismissal with prejudice of all claims against the [owner]." Appellees seem to assert that joining the owner would have been futile because the owner might have been able to assert a successful res judicata defense. The trial judge had no indication from the owner, however, that it would pursue a res judicata defense if joined. Mere speculation about an absent party's possible defenses cannot form the basis for concluding joinder is infeasible, given the clear language of the Rule and accompanying advisory committee note. *See* Fed.R. Civ.P. 19, advisory committee's note to the 1966 amendment ("if [an absent person needed for a just adjudication] is amenable to service of process and his joinder would not deprive the court of jurisdiction ... he should be joined as a party; and if he has not been joined, the court should order him to be brought into the action").

Moreover, there are other good reasons to doubt that ordering the owner's joinder would have been futile in the instant case. In view of the settlement stipulation between appellant and the owner, a real possibility exists that the owner would not have objected to being added to the lawsuit. The owner was in the position of a stakeholder. In the stipulation of settlement, appellant agreed to dismiss with prejudice all of his claims against the owner, in exchange for $14,000. The owner also agreed that if appellant ultimately pre-

vailed in his declaratory judgment action against appellees, the owner would then convey the disputed units to appellant. Thus, the owner effectively agreed to convey the apartments to whichever party the court determined had the right to purchase them. *Cf. Habib v. Miller, supra,* 284 A.2d at 57 (settlement agent was not an indispensable party because he "testified that the firm would pay the money to whomever the court directed").[5] Furthermore, the stipulation made clear the owner's recognition that other claims were pending and the stipulation might not eliminate the need for the other claims to be pursued.

Even if the owner ultimately raised a valid res judicata defense, ordering its joinder might still have cured all of the prejudice claimed by appellees. Appellees assert that the owner's presence was necessary in order to prevent the possibility of future litigation between themselves and the owner. Had the trial judge ordered the owner joined in some capacity, however, *see, e.g.,* Super.Ct.Civ.R. 19(a), appellees would have been able to raise cross-claims against the owner to protect their interests, as appellees admit in their brief. Appellees might, for example, have sought a declaratory judgment that they were entitled to purchase the two units. The owner would have been unable to assert res judicata as a defense to such a claim, and appellees have offered no other reason why all of the prejudice they claim would not have been cured.

### C. *Dismissal Was Inappropriate.*

■ Even if joining the owner was not feasible, the trial judge still improperly concluded that "in equity and good conscience the action" should not proceed in the owner's absence. Super.Ct.Civ.R. 19(b). A trial judge confronted with a Rule 19(b) inquiry should seek to identify with precision how the parties or the absent person would be prejudiced if the action

**5.** Appellees' contention that the owner would not voluntarily resubmit itself to the trial court's jurisdiction misses the mark; Rule 19 places the obligation on the trial court. In any event,

appellees can do no more than speculate that the owner would have objected to resolving all issues in a single lawsuit.

were to proceed without the absent person. *Provident Tradesmens, supra,* 390 U.S. at 112–16, 88 S.Ct. at 739–41 (practical effect of allowing the case to continue without the absent party). In the instant case the only asserted prejudice caused by the owner's absence stems from the possibility that appellees would face multiple litigation. In particular, appellees maintain that if appellant were to prevail in his suit, the owner would be required to convey the units to appellant, and appellees would then be forced to sue the owner. This prejudice, however, could have been alleviated by use of measures much less extreme than dismissal of appellant's declaratory judgment claims. *See Heath v. Aspen Skiing Corp.,* 325 F.Supp. 223, 229 (D.Colo.1971) ("the philosophy of present Rule 19 is to avoid dismissal whenever possible").

■ For over two years the owner was a party to the lawsuit. During that time appellees had ample opportunity to assert cross-claims against the owner, thereby eliminating the possibility of future litigation:

> [A] defendant faced with the prospect of multiple actions may be in a position to bring in absent persons ... by means of defensive interpleader, or by using impleader or asserting a counterclaim.... In short, the Rule 19(b) notion of equity and good conscience contemplates that the parties actually before the court are obliged to pursue any avenues for eliminating the threat of prejudice.

7 WRIGHT, MILLER & KANE, *supra,* § 1608 at 112–13. Even after appellant settled with the owner, appellees could have moved to implead the owner under Super.Ct.Civ.R. 14. Rather than taking any of these measures, the first time appellees complained of the defect in parties was when they moved for dismissal. Because appellees made no effort to cure the prejudice they asserted, the trial judge should have looked more skeptically on their claim that "equity and good conscience" required dismissal. *See Kelly v. Commercial Union Ins. Co.,* 709 F.2d 973, 978 (5th Cir.1983) ("If the defendant's fears of exposure to double liability were justified, it could, as the district court suggested, have filed a counter claim ... but it chose not to do so"); *Boone v. General Motors Acceptance Corp.,* 682 F.2d 552, 553 (5th Cir.1982) (reversing trial court dismissal because, in part, the defendants "could protect their interests by joining the dealer as a third party should they care to do so"); *Abel v. Brayton Flying Serv.,* 248 F.2d 713, 716 (5th Cir.1957) (the defendant "did not avail himself of the right to file ... a counter-claim [against the absent party] and cannot now complain"); *Gauss v. Kirk,* 91 U.S. App.D.C. 80, 83, 198 F.2d 83, 86 (1952) ("we note that [the defendant] has made no effort to avoid the risk of double liability by seeking to interplead the [absent] parties or by depositing the fund with the court").

The trial judge's reliance on *Donnelly v. District of Columbia Redevelopment Land Agency,* 106 U.S.App.D.C. 99, 269 F.2d 546, 548 (1959) ("[j]ustice and fairness required the tenant's presence in the case, if indeed it was not a necessary party") was misplaced; the opinion does not suggest that declaratory judgment counts should be dismissed under such circumstances as existed here, where the judge failed to determine whether joinder of the owner was feasible and appellees could have taken steps to cure the asserted prejudice.[6]

---

**6.** The judge's reliance on *Delno v. Market St. Ry. Co.,* 124 F.2d 965 (9th Cir.1942), and *Stahl v. Allchin,* 155 Neb. 412, 52 N.W.2d 251 (1952), was similarly misplaced. In those cases the courts did not reach the Rule 19 issue, but held that the policy in favor of rendering judgments under the Federal Declaratory Judgment Act and Fed.R.Civ.P. 57 ("When declaratory relief will not be effective in settling controversy, the court may decline to grant it") would not be served by proceeding to determine the issue between the parties since the absent person would still have the right to litigate the same issue. *Delno,* 124 F.2d at 968; *Stahl,* 52 N.W.2d at 254. Both cases were decided before Rule 19 was amended to make clear the policy in favor of avoiding unnecessary dismissals. *See Heath v. Aspen Skiing Corp., supra,* 325 F.Supp. at 229 ("the philosophy of present Rule 19 is to avoid dismissal whenever possible"). Moreover, this court's interpretation of who is an "indispensable party" has tended to be fairly narrow. *See Flack v. Laster,* 417 A.2d 393 (D.C.1980) (indispensable party has interest in proceeding that is not distinct and severable, and would be preju-

Accordingly, we reverse the dismissal of appellant's declaratory judgment claims and remand the case for the trial judge to exercise his discretion by taking some action other than dismissing the claims. There are various ways in which the judge could cure the prejudice asserted by appellees. The owner could be joined as a defendant, or (if the judge concludes that this is a "proper case") as an involuntary plaintiff. *See* Super.Ct.Civ.R. 19(a). Alternatively, the judge could allow appellees to implead the owner to state a claim against it (perhaps for a declaratory judgment). The judge also might allow appellant to amend his complaint in order to seek more limited declaratory relief. We need not and do not choose among these options; nor do we intend this list to be exclusive. The trial judge, on remand, is free to take whatever action, short of dismissal, that he concludes is appropriate after considering the proper factors. *See generally Johnson, supra,* 398 A.2d at 365.

## II.

■ Appellant further contends that the trial judge erred in denying his motion for summary judgment on the declaratory judgment claims. Appellant asserted that the Association was powerless to terminate his membership, and that he therefore was entitled as a matter of law to a declaration that his membership was illegally revoked. We find no error by the trial judge in denying the motion for summary judgment.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Super.Ct.Civ.R. 56(c). The court must view the facts in the light most favorable to the non-moving party. *Sayan v. Riggs Nat'l Bank,* 544 A.2d 267, 268 (D.C.1988). Upon

this court's independent review of the record, *id.,* it is clear that appellant has failed to demonstrate that he was entitled to judgment as a matter of law.

Appellant contends that the District of Columbia Rental Housing Conversion and Sale Act, D.C.Code §§ 45–1601 to 45–1663 (1990) ("the Act"), precludes a tenants' association from removing a member who meets the statutory definition of "head of household." This construction of the Act is untenable, and the trial judge properly rejected it. The Act contains the following definitional sections, on which appellant relies:

(9) "Head of household" means a tenant who maintains the affected rental unit as the tenant's principal place of residence, is a resident and domiciliary of the District of Columbia, and contributes more than one-half of the cost of maintaining the rental unit....

(17) "Tenant" means a tenant, subtenant, lessee, sublessee, or other person entitled to the possession, occupancy or benefits of a rental unit within a housing accommodation....

(18) "Tenant organization" means an organization that represents at least a majority of the heads of households in the housing accommodation....

D.C.Code § 45–1603 (1990). Appellant maintains that these provisions are "the only requirements for membership in a tenant association.... There is no legislative authority for owners or tenants to impose different criteria for membership in a tenant organization...." Appellant further argues that the undisputed facts show that he satisfied the "legislative" criteria for membership,[7] and he is therefore entitled to a declaration that he was a member in good standing of the Association.

Appellant's argument reads too much into the definitional section of the Act. The language on which he relies provides

diced in the party's absence); *Habib v. Miller, supra,* 284 A.2d at 56 (holder of money not indispensable party in purchaser's suit against seller for return of money).

7. Appellees contend that the facts are in dispute as to whether appellant satisfied the "legislative" criterion of residency at the housing accommodation. Because we do not consider the "legislative" criteria determinative, we do not address this issue.

only that a tenant organization must contain at least half of the heads of households, but does not specify any criteria for membership or any procedures a tenant organization must follow before terminating membership. Indeed, under appellant's view, only "heads of households" would be allowed to join a tenant organization. Thus, appellant's interpretation would forbid an organization from extending membership, for example, to both a husband and wife who shared an apartment. We decline to construe the Act so narrowly.

Moreover, appellant's argument ignores another provision of the Act which requires a tenants' association to adopt bylaws governing its actions: "In order to make a contract of sale with an owner, the tenants shall: (A) Form a tenant organization with the legal capacity to hold real property, elect officers, and adopt bylaws...." D.C. Code § 45–1640 (1990). A tenants' association is required to file "a copy of the bylaws" with the District of Columbia government. *Id.* As one commentator has explained, the common definition of "bylaws" encompasses provisions dealing with a corporation's membership:

> It is a matter of general knowledge that corporations, particularly the fraternal and mutual benefit and other membership corporations, commonly prescribe the qualifications necessary for membership and the mode or procedure in which it may be acquired; and it is settled that such matters are competent for regulation by bylaws. [Nonprofit membership] corporations may also make reasonable bylaws providing for the expulsion or suspension from, or the termination of, membership for proper and reasonable cause....

8 W. Fletcher, Fletcher Cyclopedia of the Law of Private Corporations, § 4202 at 740–41 (1990). *See De Yturbide v. Metropolitan Club,* 11 App.D.C. 180, 195 (1897) (expulsion of member pursuant to provisions of bylaws, which governing statute authorized); *see also Snowden v. Ben-*

*ning Heights Coop., Inc.,* 557 A.2d 151 (D.C.1989) (exclusion pursuant to bylaws, under Maryland law); *Clydesdale, Inc. v. Wegener,* 372 A.2d 1013 (D.C.1977) (unlawful expulsion where cooperative board violated statute on expulsion of members). Thus, in the absence of any statutory provision on expulsion, and given the ordinary usage of the term "bylaws," we conclude that the Act envisioned that a tenant organization could establish reasonable rules governing its membership. Accordingly, appellant has failed to demonstrate that, as a matter of law, the record clearly demonstrates that his membership was illegally revoked. The trial judge therefore properly denied appellant's motion for summary judgment.[8]

### III.

Appellant's final contention is that the trial judge erred in granting summary judgment to appellees on the tortious interference counts. In their motion, filed after dismissal of the declaratory judgment counts, appellees made four arguments to support their claim that the undisputed facts demonstrated that they were entitled to judgment as a matter of law. After an independent review of the record, however, *Sayan, supra,* 544 A.2d at 268, we conclude that none of the arguments provide support for the summary judgment. Accordingly, we reverse the summary judgment on the tortious interference claims.

Appellees first argue that they are entitled to summary judgment because appellant's response to their motion failed to place any material facts into dispute. Appellees submitted affidavits and exhibits to show that there was no genuine issue of material fact and that they were entitled to judgment as a matter of law on the tortious interference claims. Appellant was therefore required, under Rule 56, to respond with affidavits or other evidence to demonstrate the existence of a genuine issue for trial:

8. This is not to say that appellant may not ultimately prevail at trial. If appellant can show, as he alleges in his complaint, that the Association violated its own bylaws in unrea-

sonably revoking appellant's membership, he presumably would be entitled to the declaratory judgment he seeks.

When a motion for summary judgment is made and supported as provided in this Rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this Rule, must set forth specific facts showing there is a genuine issue for trial.

Super.Ct.Civ.R. 56(e). *See* Super.Ct.Civ.R. 12–I(k). Appellant submitted his opposition without attaching any affidavits or other evidence of disputed facts.[9] The court has held, however, that a sworn complaint "is tantamount to an affidavit" and may therefore be sufficient to raise a genuine issue of fact. *Thompson v. Seton Invs.*, 533 A.2d 1255, 1257 (D.C.1987) (footnote omitted). Appellant's sworn complaint disputed all of the material facts relied on by appellees' summary judgment motion. Therefore, appellant met his burden of responding to the motion by showing the existence of a material factual dispute.

■ Appellees also argue that they are entitled to summary judgment because appellant is collaterally estopped as a matter of law from proving an essential element of his claim for tortious interference: the owner's breach of the contracts with appellant. Appellees contend that appellant's dismissal with prejudice of his claims against the owner "operates as a final judgment in favor of the" owner, and that appellant is therefore collaterally estopped "from showing that the [owner] breached or abandoned his contracts with" appellant. Appellees' argument is unpersuasive. "The fundamental rationale of issue preclusion dictates the clearly settled requirement that it be limited to matters that have been actually decided" in the prior adjudi-

cation. 18 WRIGHT, MILLER & COOPER, *supra*, § 4420 at 182; *see also Brown v. Felsen*, 442 U.S. 127, 139 n. 10, 99 S.Ct. 2205, 2213 n. 10, 60 L.Ed.2d 767 (1979). The voluntary dismissal with prejudice of appellant's breach of contract claims against the owner did not in any way decide whether the owner breached his contracts with appellant. Thus, appellant is free in the present suit to litigate the issue whether the owner breached the contracts. Appellees cite no authority to the contrary.[10]

■ Appellees contend further that summary judgment was proper on the ground that they "could not be held liable for tortious interference with contract because [they were parties] to the contract allegedly interfered with." Appellees rely on *Donahoe v. Watt*, 546 F.Supp. 753, 757 (D.D.C.1982), in which the court noted that a "defendant's conduct under his own contract with the plaintiff may or may not rise to the level of a breach of that contract, but it cannot support an action for interference with it." The contract in *Donahoe*, however, was signed only by the plaintiff and the defendants, and did not involve a third party. Thus, the *Donahoe* court relied on nothing more than the hornbook rule that "the defendant's breach of his own contract with the plaintiff is of course not a basis for the tort" of interference with contractual relations. W. PROSSER & W. P. KEETON, PROSSER ON TORTS, § 129 at 990 (5th ed. 1984). This rule stems from the common sense notion that a plaintiff should not be allowed to convert a breach of contract claim into a claim for tortious interference.

Neither *Donahoe* nor the other cases relied upon by appellees consider the situation posed by the instant case, however, in

---

9. Appellant's opposition referred to the testimony at trial, but appellant has failed to transmit the trial transcript to this court. *See Cobb v. Standard Drug Co. Inc.*, 453 A.2d 110, 111 (D.C. 1982) (appellant has duty to present appellate court with record sufficient to show trial court error). At oral argument appellant advised that his failure was intentional.

10. Appellees rely on several cases involving *claim preclusion* resulting from voluntary dis-

missals with prejudice. *See, e.g., Owens v. Simons*, 134 A.2d 92 (D.C.1957). Appellees ignore the key distinction between claim preclusion and issue preclusion: "Whereas res judicata [claim preclusion] forecloses all that which might have been litigated previously, collateral estoppel [issue preclusion] treats as final only those questions actually and necessarily decided in a prior suit." *Brown v. Felsen, supra*, 442 U.S. at 139 n. 10, 99 S.Ct. at 2213 n. 10.

which there are multiple parties to a contract: appellant, appellees, and the owner. In such a situation the plaintiff (appellant) alleges the defendant (Tenant Association) interfered with the plaintiff's contractual relationship with the third party (the owner). Because such conduct would not necessarily constitute a breach of the contract, there is no analytical reason why a plaintiff, such as appellant, should be barred from pursuing a tortious interference theory. Appellees cite no authority to the contrary.

Finally, appellees contend that they cannot be liable for tortious interference because their actions were "privileged." This court has held that "[o]nce a prima facie case has been established liability [for tortious interference] may still be avoided if the defendant can establish that his conduct was legally justified or privileged." *Alfred A. Altimont, Inc. v. Chatelain, Samperton & Nolan*, 374 A.2d 284, 288 (D.C.1977). Thus, a defendant is privileged if he acts in order to protect "a present, existing economic interest." *Dresser v. Sunderland Apartment Tenants Ass'n*, 465 A.2d 835, 839 n. 12 (D.C. 1983). Appellees contend that even if they interfered with appellant's contracts with the owner, their actions were justified in order to protect the economic interests of the members of the Association. The problem with appellees' argument is that at the time the Association revoked appellant's membership it was charged with representing *his* interests, as well as the interests of the other tenants. Viewing the facts in the light most favorable to appellant, as we must, *Sayan, supra*, 544 A.2d at 268, appellees unjustifiably revoked appellant's membership, thereby favoring some members of the Association over appellant. If appellant can prove such a theory, appellees' conduct would not be privileged. Therefore, as with many cases that turn on intent, *see* PROSSER ON TORTS, *supra*, § 129 at 982 ("the basis for liability for interference with contract is intent"), summary judgment was inappropriate on the tortious interference claims. *See, e.g., Spellman v. American Sec. Bank*, 504 A.2d 1119, 1122 (D.C.1981) (summary judgment should be granted sparingly in cases involving motive or intent).

Accordingly, the judgments dismissing the declaratory judgment counts and granting appellees summary judgment are reversed; the judgment denying appellant summary judgment is affirmed.

*Affirmed in part, reversed in part.*